TIMOTHY C. FOX
Montana Attorney General
J. STUART SEGREST
MATTHEW T. COCHENOUR
Assistant Attorneys General
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
ssegrest@mt.gov; mcochenour2@mt.gov
Phone: (406) 444-2026, Fax: (406) 444-3549

COUNSEL FOR DEFENDANTS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA

| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., | Case No. CV 16-00023-H-DLC |
|---|---|
| Plaintiff, <br> v. <br> JONATHAN MOTL, in his official capacity as the Commissioner of Political Practices for the State of Montana, *et al.*, <br> Defendants. | **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

## INTRODUCTION

Plaintiff, National Association for Gun Rights (NAGR or Plaintiff), without explaining the urgency, requests a preliminary injunction by May 15, 2015, concerning the Commissioner's interpretation of a mailing from 2012, and concerning the constitutionality of two campaign regulation statutes. Plaintiff's

motion fails at the initial threshold, because they have not shown a likelihood of success on the merits.

As to the 2012 Mailer, Plaintiff seeks an advisory opinion as to whether this prior mailing is express advocacy, and whether Plaintiff has to (or had to, it is not clear exactly) register as a political committee. As the Commissioner's ruling makes clear, though, any administrative action concerning this 4-year old mailing is at the beginning stages. The Commissioner may well opt not to pursue judicial action against NAGR, and the statute of limitations runs June 5, 2016, making the claim unripe at this time. Even putting ripeness aside, this Court should abstain from considering the issue and allow NAGR to make these arguments, if necessary, in the ongoing State proceeding.

Concerning the challenge to the definition of "electioneering communication," Plaintiff's hypothetical communication may qualify as the functional equivalent of express advocacy. Even if not, the Ninth Circuit, contrary to Plaintiff's position, does not recognize a bright-line difference between express and issue advocacy, especially where a plaintiff, like NAGR[1], already has a political action committee. *Human Life of Washington v. Brumsickle*, 624 F.3d 990, 1012 n.4 (9th Cir. 2010). In the case of disclosure, either is subject to exacting scrutiny. Further, the Ninth Circuit has opted not to follow the Seventh

---

[1] *See* http://nagr.org/cruzleepaulPAC.aspx?pid=1b.

Circuit's analysis, in *Barland*,[2] regarding the weight of the burden imposed by political committee requirements. *Yamada v. Snipes*, 786 F.3d 1182, 1196 n.7 (9th Cir. 2015). Instead, *Yamada* and *Brumsickle* compel the conclusion that Montana's provision, and resulting disclosure requirements, meet exacting scrutiny.

Likewise, the challenge to the vote-reporting provision misconstrues the applicable standard of review. The vote-disclosure requirement is most properly analyzed as an election disclosure or disclaimer. As such, per *Yamada* and *Brumsickle*, the operative test is exacting scrutiny, not strict. Under this more lenient standard, the vote-reporting provision passes muster as substantially related to ensuring voters are aware of the accuracy of legislative voting claims.

The preliminary injunction motion should be denied.

# ARGUMENT

Prior to being entitled to a preliminary injunction, Plaintiff must show each of the following: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm if injunctive relief is not granted, (3) the balance of equities tips in plaintiff's favor, and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008). If a plaintiff fails to

---

[2] *Wisconsin Right to Life v. Barland*, 751 F.3d 804 (7th Cir. 2014).

demonstrate it is likely to succeed on the merits of its claims, the remaining "*Winter* elements" need not be considered. *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011) (noting the district court "properly considered the remaining *Winter* elements only as to claims it concluded were meritorious.").

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. "A preliminary injunction is not a preliminary adjudication on the merits, but a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Textile Unlimited v. A.BMH.*, 240 F.3d 781, 786 (9th Cir. 2001) (emphasis added). A plaintiff thus must demonstrate that irreparable injury is not just "possible," but "*likely* in the absence of an injunction." *Id.* at 22-23 (emphasis in the original).

I. **PLAINTIFF IS UNLIKELY TO SUCCEED ON THE MERITS.**

   A. **The 2012 Mailing Claim Is Not Ripe.**

   Plaintiff, while admitting the Commissioner correctly "followed the Supreme Court's lead" regarding the definition of "expenditure" prior to 2015, nevertheless seeks a declaration that its 2012 mailer targeting Bruce Tutvedt (2012

Mailer[3]), Ex. 1 to Complaint, is not express advocacy and thus not an "expenditure" under Montana law. Doc. 4 (Pl's Br.) at 12. Plaintiff also seeks an injunction "concerning the Commissioner's intended efforts to seek civil penalties against it." *Id.* Plaintiff is wrong that the Commissioner has decided to seek civil penalties against it, and thus this claim is unripe.

As explained in the Commissioner's attached declaration (Ex. 1), he has not made a decision as to whether to take action against NAGR regarding the 2012 Mailer. Motl Decl., ¶ 5. Indeed, it is "possible and, even likely, that the Commissioner will forgo litigation with NAGR" regarding the 2012 election issues. *Id.*, ¶ 6. If the Commissioner opts not to bring an action against NAGR, "judicial enforcement is over and waived." *Id.* Further, if the Commissioner does not make a claim against NAGR by June 5, 2016, the statute of limitation will run on any claim regarding the 2012 Mailer. *Id.*

Because the Commissioner has not made a claim against NAGR regarding the 2012 Mailer, and is likely never going to do so, Plaintiff's claim is unripe. *See United States v. Braren*, 338 F.3d 971, 975 (9th Cir. 2003) (agency action must be final before a declaratory judgment action is ripe). As such, Plaintiff's claim

---

[3] Defendants use the shorthand "2012 Mailer," instead of "Tutvedt Mailer," to distinguish the mailer sent in 2012 from a hypothetical future mailer which Plaintiff also discusses in its Complaint and Motion.

regarding the 2012 Mailer should be dismissed, as Defendants will argue in a future motion. Plaintiff is therefore unlikely to succeed on the merits of this claim.

The challenge regarding the 2012 Mailer is either not ripe, because no enforcement action has been taken, or it's at the beginning stage of a state administrative and judicial proceeding, which this Court should allow to proceed without interference. *See San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*, 546 F.3d 1087, 1094 (9th Cir. 2008) (abstaining from issuing injunction against state election commission). Plaintiff's claims and defenses can be made in the state action should the Commissioner pursue judicial enforcement against NAGR for the 2012 Mailer. For this reason also, Plaintiff is unlikely to succeed on the merits.

### B. Montana's "Electioneering Communications" Provision Meets Exacting Scrutiny.

Plaintiff asserts that it is challenging Montana's "Electioneering Communications" provision, Mont. Code Ann. § 13-1-101(15), for being "overbroad." Pl's Br. at 13. Plaintiff's specific claim, though, is that any reporting requirements imposed "upon issue advocacy groups," as opposed to groups engaged in "express advocacy," are per se unconstitutional. *Id.* at 14-15. The Ninth Circuit, though, has rejected a bright-line distinction between issue and express advocacy, and Plaintiff misconstrues Montana's disclosure scheme involving "electioneering communications."

Montana's "electioneering communication" reporting requirements, like the disclosure provisions upheld in *Brumsickle*, are "narrowly tailored such that the required disclosure increases as a political committee more actively engages in campaign spending and as an election nears." 624 F.3d at 1013. If a person engages in "electioneering communication," as defined at Mont. Code Ann. § 13-1-101(15)(a),[4] they have made an "expenditure," 13-1-101(17)(a), but do not necessarily have to register as a "independent committee," 13-1-101(23), the form of political committee requiring full reporting and disclosure. Depending on the amount of political involvement by the committee, they may only have to register as an "incidental committee," 13-1-101(22), which this Court has already determined imposes only a minimal burden, sometimes as little as one report. *NAGR v. Murry*, 969 F. Supp. 2d 1262, 1270 (D. Mont. Sept. 17, 2013) (*NAGR I*).[5]

---

[4] A publicly distributed, paid communication: (1) "made within 60 days of the initiation of voting in an election" (defined by rule as the time of mailing of absentee ballots, which equates to 90 days [not 105] prior to election day, *see* Mont Admin. R. 44.11.605(2)); (2) "that does not support or oppose a candidate or ballot issue"; (3) "that can be received by more than 100 recipients in the voting district"; (4) and that either
    (i) "refers to one or more clearly identified candidates";
    (ii) depicts the name, image, likeness, or voice of one or more clearly identified candidates"; or
    (iii) "refers to a political party, ballot issue, or other question submitted to the voters."

[5] *See also Montanans for Community Development v. Motl*, CV 14-55-H-DLC, Doc. 122, Decl. of Jonathan Motl at 3-6 (attached as Ex. 2).

While admitting exacting scrutiny applies to disclosure regulations such as this provision, Pl's Br. at 13, Plaintiff, like the plaintiff in *Brumsickle*, claims that non-express political speech "constitutes issue advocacy for which virtually any content-based regulation is unconstitutional." Pl's Br. at 14; compare to *Brumsickle*, 624 F.3d at 1015 (characterizing plaintiff's position as: issue advocacy is "constitutionally sacrosanct" and "may not be regulated."). Plaintiff is wrong.

In support of this rigid position Plaintiff cites to *Buckley v. Valeo*, 424 U.S. 1 (1976) and *FEC v. Wisconsin Right to Life*, 551 U.S. 449 (2007). Pl's Br. at 14. But as with the similar argument made by the plaintiff in *Brumsickle*, even if Plaintiff's "proposed communications constitute unadulterated issue advocacy," a doubtful position as expressed below, "its argument has been foreclosed by the Supreme Court's opinion in *Citizens United*." *Brumsickle*, 624 F.3d at 1016. There the Supreme Court rejected a bright-line rule distinguishing express and issue advocacy. *Id.* (citing *Citizens United v. FEC*, 558 U.S. 310, 369 (2010) ("we reject Citizens United's contention that the disclosure requirements must be limited to speech that is the functional equivalent of express advocacy.")).

Plaintiff also cites to *Wisconsin Right to Life v. Barland*, 751 F.3d 804 (7th Cir. 2014) in support of its position that issue advocacy is "constitutionally sacrosanct." Pl's Br. at 15-16. *Barland*, though, is distinguishable, has not been

followed by the Ninth Circuit,[6] and in any case ends up applying exacting scrutiny.[7] In *Barland*, the provisions at issue imposed "full-blown PAC duties." *Id.* at 841. That is not the case here, as discussed above. Depending on the amount of political involvement, an entity in Montana making an "electioneering communication" may only have to register as an "incidental committee." This narrowly tailored, sliding scale approach meets exacting scrutiny. *Brumsickle*, 624 F.3d at 1013.

Plaintiff attacks Montana's disclosure requirements as if all groups must meet full "independent committee" reporting and disclosure requirements. Pl's Br. at 15-17. Thus they are factually and legally incorrect when they state that "any group that makes any communication within 105 days of an election containing the name of a candidate or a political party is now forced to comply with Montana's burdensome political committee regulations." Pl's Br. at 17. The fact that disclosure and regulatory requirements increase as the political activity increases undercuts this argument. In addition, a communication only comes within the "electioneering communications" criteria if it occurs within *90 days* of an election

---

[6] *See Yamada*, 786 F.3d at 1196 n.7 (refusing to adhere to Barland's conclusion regarding the "heavy administrative burdens" of Wisconsin's "PAC-like disclosure program"). While *Yamada* considered Hawaii's "noncandidate [independent] committee" requirements, it did not reach the challenge to the "electioneering communications" reporting requirements because plaintiff lacked standing. *Id.* at 1203-04.

[7] *Barland*, 751 F.3d at 840.

day.  Mont. Admin. R. 44.11.605(2); *see also* COPP-2016-AO-005 at 3[8].  This 90-day window is based on the date 60 days prior to when absentee ballots are mailed, and thus the window is 60 days prior to the beginning of voting.  *Id*.

Plaintiff claims to primarily engage in issue advocacy, and that its proposed future communications, which it asserts will trigger Montana's electioneering communication reporting requirements, will be substantially the same as its 2012 Mailer, and thus pure issue advocacy.  Pl's Br. at 1-5.  It is doubtful such a mailer would qualify as pure issue advocacy.  The 2012 Mailer was sent during the closely fought 2012 primary election between Tutvedt and Roberts.  Ex. 2 to Doc. 1 at 4-5; Doc. 1 at 1.  It suggests Tutvedt single-handedly killed a "smokeless powder plant" in Flathead County, thus costing jobs.  Given the "detailed language" criticizing Tutvedt, and the "unique timing" prior to the primary, it is reasonable to interpret the communication as a call to vote against Tutvedt. *Brumsickle*, 624 F.3d at 1015; *Yamada*, 786 F.3d at 1203.

Even assuming Plaintiff is correct that it primarily engages in issue advocacy, it would then only have to register as an "incidental committee."  *See* Mont. Code Ann. § 13-1-101(22) ("incidental committee" is a group not specifically organized for the primary purpose of supporting or opposing

---

[8] Located at: http://www.politicalpractices.mt.gov/content/5campaignfinance/2016-AO-005-Final-signed.pdf.

candidates, but that incidentally becomes a committee by making an expenditure). This Court has already determined that the "burden associated with Montana's regulations for incidental political committees [which have not materially changed since 2013[9]] are minimal." *NAGR I*, 969 F. Supp. 2d at 1270.

Montana's electioneering communication reporting requirements thus meet exacting scrutiny, as the important interest fulfilled by disclosure requirements, such as increasing transparency, informing Montanans about who is behind the messages vying for their attention, and decreasing circumvention, is uncontested. *Citizens United*, 558 U.S. at 369; *Brumsickle*, 624 F.3d at 1008, 1011-12; *Alaska Right to Life v. Miles*, 441 F.3d 773, 793 (9th Cir. 2006) ("compelling state interest in informing voters who or what entity is trying to persuade them to vote in a certain way."). As explained by this Court, "the public's interest in transparent political funding outweighs the minimal burden the incidental disclosure requirements impose, even for one-time expenditures." *NAGR I*, 969 F. Supp. 2d at 1270 (citing *Family PAC v. McKenna*, 685 F.3d 800, 809 (9th Cir. 2012)). Plaintiff is thus unlikely to succeed on the merits of the electioneering communication claim.

---

[9] Ex. 2 (Motl Decl.) at 3-6.

### C. Montana's Vote-Reporting Provision Is a Disclaimer or Disclosure Provision, and Thus Need Only Meet Exacting Scrutiny, Which It Does Based on the Interest in Accurately Informing Voters about Candidate Voting Records.

Plaintiff derides the vote-reporting provision, 13-35-225(3)(a) (2015), as being the third iteration[10] of this statute. Pl's Br. at 18. But Plaintiff does not argue that the current version is vague, which was the fatal flaw in the prior versions. Instead, Plaintiff urges this Court to apply strict scrutiny to the provision because, in Plaintiff's view, the provision "compels speech" and is a "content-based restriction." *Id.* at 18-21. Plaintiff's claim fails because the provision is a disclosure or disclaimer, and thus subject to exacting scrutiny, which it meets.

Montana "may regulate corporate political speech through disclaimer and disclosure requirements," though "it may not suppress that speech altogether." *Citizens United*, 558 U.S. at 319. After *Citizens United*, "[a]s trends in campaign finance jurisprudence have opened the door to even more political expenditures . . . the magnitude of the state's interest" in disclaimer and disclosure requirements has only increased. *Brumsickle*, 624 F.3d at 1007-08. Disclosure requirements

---

[10] As this Court is aware, the State previously conceded that the second version of the vote-reporting provision was unconstitutional because it still included the "on the same issue" language found by Judge Lovell to be vague. *See* Doc. 26 at 4 in *Monforton v. Motl, et. al.*, CV 14-2-H-DLC. The current version does not include "on the same issue" or similar language.

"advance the important and well-recognized governmental interest of providing the voting public with the information with which to assess the various messages vying for their attention in the marketplace of ideas." *Id.* at 1008.

The vote-reporting provision requires that printed election material discussing a candidate's voting record disclose the particular vote or votes on which the claim is based, disclose all votes on the same bill, and include a signed disclaimer that the statements are accurate to the best of the signer's knowledge. Mont. Code Ann. § 13-35-225(3)(a). If the vote disclosure does not "conveniently" fit on the mailer, disclosure may be met by filing the required information with the Commissioner. § 13-35-225(4). Thus the provision requires disclosure and a disclaimer, and advances the important interests of providing the voting public with "information with which to assess the various messages vying for their attention" by requiring voting record claims be linked to actual votes and affirmed as true.

The vote-reporting provision is also substantially related to the important interest of providing accurate information to voters. Plaintiff suggests that this information could be provided in a less restrictive manner through alternative means, such as an "online database" containing legislative voting records, and points to the Montana Legislature's website, www.leg.mt.gov, as an example. Pl's Br. at 22-23. But this suggestion misses the point. Merely providing access to an

online database does not afford the salient information in nearly as accessible a format as having that information within the same election mailer that makes the voting-record claim. Without disclosure, a citizen may be confused, for example, as to which bill is being referenced by the voting-record allegation, and thus unable to effectively research the applicable vote.

As such, Plaintiff is unlikely to succeed on the merits of this claim. Because Plaintiff is unlikely to succeed on the merits of any of its claims, the remaining "*Winter* elements" need not be considered. *Thalheimer*, 645 F.3d at 1115.

## II. PLAINTIFF FAILS TO SHOW AN URGENT NEED FOR RELIEF OR A LIKELIHOOD OF IRREPARABLE HARM.

"A preliminary injunction is sought upon the theory that there is an urgent need for speedy action to protect the plaintiff's rights." *Lydo Enters. v. Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) (quotation and citation omitted). Plaintiff requests relief by May 15, 2016, but does not explain why its need for an injunction is so urgent. Possibly Plaintiff seeks to send out mailings advocating against incumbents prior to June's primary election. Should this be the reason for urgency, it strengthens the argument that Plaintiff intends to engage in express advocacy or its functional equivalent.

Plaintiff's rationale is limited to its conclusory claim that "timing is of the essence" simply because it alleges an impact on its "First Amendment freedoms."

Pl's Br. at 24-25 (citing cases). But unlike the political speech cases cited by Plaintiff, the provisions challenged here do not foreclose Plaintiff's ability to speak. Instead the provisions require disclosure, a substantially less burdensome imposition. *See Citizens United*, 558 U.S. at 366 ("Disclaimer and disclosure requirements may burden the ability to speak, but they impose no ceiling on campaign-related activities and do not prevent anyone from speaking.") (internal quotations omitted). As such, while Plaintiff's desired political speech may be regulated, it is not prohibited, and thus any burden does not rise to the level of irreparable harm.

### III. THE BALANCE OF EQUITIES TIP IN FAVOR OF MONTANA, NOT NAGR.

Plaintiff argues that the fact that it has raised a serious First Amendment question "compels" that the balance of hardships tip in its favor. *See* Pl's Br. at 25. This is an overstatement, and the case Plaintiff cites articulates principles "no longer viable" following *Winter*. *See Dex Media West Inc. v. City of Seattle*, 790 F. Supp. 1276, 1289 n.8 (W.D. Wash. May 8, 2011). More recently, the Ninth Circuit has stated that "[b]y bringing a colorable First Amendment claim, [plaintiff] certainly raises the specter of irreparable injury. But simply raising a serious claim is not enough to tip the hardship scales." *Paramount Land Co. v. California Pistachio Comm'n*, 491 F.3d 1003, 1012 (9th Cir. 2007) (emphasis

added). Enjoining Montana's election laws on the eve of an election would deprive Montanans of information that they have a compelling interest in knowing, at a time they need it most. The equities tip in favor of Defendants.

## IV. PLAINTIFF FAILS TO SHOW THAT AN INJUNCTION IS IN THE PUBLIC INTEREST.

Courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. Here the public's interest is furthered by the challenged provisions that require disclosure of who is spending money in, or around, campaigns, and that provide accurate information regarding statements made during campaigns. *See Brumsickle*, 624 F. 3d at 1005 ("disclosure laws help ensure that voters have the facts they need to evaluate the various messages competing for their attention."). Furthermore, for the reasons explained above, Plaintiff's proposed political speech, while regulated, is not entirely prohibited. The public interest would thus not be served by an injunction.

# CONCLUSION

For the above-stated reasons, Plaintiff's motion for a preliminary injunction should be denied.

Respectfully submitted this 27th day of April, 2016.

> TIMOTHY C. FOX
> Montana Attorney General
> 215 North Sanders
> P.O. Box 201401
> Helena, MT 59620-1401
>
> By: _/s/ J. Stuart Segrest_
>     J. STUART SEGREST
>     Assistant Attorney General

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the clerk of the court for the United States District Court for the District of Montana, Helena Division, by using cm/ecf system. Participants in the case who are registered cm/ecf users will be served by the cm/ecf system.

DATED: April 27, 2016     _/s/ J. Stuart Segrest_
                                                    J. STUART SEGREST
                                                    Assistant Attorney General