Matthew G. Monforton  (Montana Bar # 5245)
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718
Telephone:  (406) 570-2949
E-mail:     matthewmonforton@yahoo.com

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
# DISTRICT OF MONTANA

| | |
|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., | Case No: CV 16-00023-H-DLC |
| Plaintiff, | **NAGR'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| JONATHAN MOTL, in his official capacity as the Commissioner of Political Practices for the State of Montana; TIMOTHY C. FOX, in his official capacity as Attorney General for the State of Montana; LEO GALLAGHER, in his official capacity as County Attorney for the County of Lewis & Clark, | |
| Defendant. | |

Plaintiff National Association For Gun Rights, Inc. ("NAGR") submits the following reply in support of its motion for preliminary injunction

**ARGUMENT**

I    THE COMMISSIONER'S CONTINUED THREAT TO SEEK CIVIL PENALTIES MAKES NAGR'S CLAIMS JUSTICIABLE

The First Claim for Relief in NAGR's complaint seeks to enjoin Commissioner Jonathan Motl from commencing a civil action against NAGR based upon a mailer it sent to voters in the 2012 Republican primary for SD-3. (Verified Complaint, pp. 12-14). NAGR's concerns arose from the Commissioner's allegation made in January 2016 that NAGR and others engaged in "illegal and unreported campaign activity, through coordination." (*Id.*, p. 31). The Commissioner further alleged that the "amount of coordinated corporate resources is substantial." (*Id.*, p. 35). He declared that "[t]here can be no excuse for instances of failing to attribute, report and disclose, or for acceptance of or spending of corporate in-kind contributions, such as are involved in this matter." (*Id.*, p. 48). These were failures "justifying civil prosecution under § 13-37-124 MCA." (*Id.*, p. 49).

These statements led NAGR to reasonably conclude the Commissioner will soon name it as a defendant in a civil action. With the prospect of review by this Court, however, the Commissioner now appears to be backpeddling:

> The statute of limitations to make a claim against NAGR for the 2012 mailing will run on June 5, 2016…. It is possible, even likely, that the Commissioner will forgo litigation with NAGR and instead pursue litigation with other entities and persons involved in 2012 election issues.

(Doc. 14-1, p. 2).

Unfortunately the Commissioner refuses to give this Court a definitive answer as to whether he will seek penalties against NAGR. Instead, he makes the contradictory argument that NAGR's claim was filed (1) too early, and is thus unripe, and (2) too late, thus requiring abstention by this Court. Both arguments are wrong, as shown below.

### A. NAGR's First Claim For Relief is Ripe

The ripeness doctrine "has both constitutional and prudential components." *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010). Analyzing the constitutional component "ensure[s] that issues presented are definite and concrete, not hypothetical or abstract." *Jacobus v. Alaska*, 338 F.3d 1095, 1104 (9th Cir. 2003) (citations omitted). Thus, "while a generalized possibility of prosecution does not satisfy the ripeness requirement, a genuine threat of imminent prosecution does." *Id*. In determining whether a genuine threat of imminent prosecution exists, courts examine three factors: 1) whether the plaintiffs have articulated a "concrete plan" to violate the law in question; 2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings;

and 3) the history of past prosecution or enforcement under the challenged statute. *Id.* at 1105.

As with this matter, *Jacobus* involved a First Amendment challenge by plaintiffs facing an impending campaign-finance lawsuit by state authorities. The statute at issue in that case prohibited individuals from volunteering more than $5,000 in professional services to a political party. *Id.* at 1100. After the plaintiffs exceeded the limit, Alaska authorities sent them a letter stating that, if the law withstood a pending challenge, the state reserved the right to prosecute them but would not do so during the pendency of the litigation. *Id.*

The Ninth Circuit held that the plaintiffs satisfied all three constitutional ripeness factors. First, the plaintiffs had "gone far beyond the requirement that they articulate a concrete plan to violate the law, and instead have actually engaged in the illegal behavior at issue." *Jacobus*, 338 F.3d at 1105. Second, "while the letter sent to Jacobus does not threaten to initiate enforcement proceedings in so many words, it indicates that [state authorities are] only awaiting the outcome of the litigation to initiate such proceedings." *Id.* Third, state authorities had "a general policy of seeking civil fines in response to violations of Alaska campaign finance law." *Id.*

NAGR's First Claim for Relief arises from facts similar to those in *Jacobus*. First, like the *Jacobus* plaintiffs, NAGR has, according to the Commissioner,

violated Montana campaign finance law. (Verified Complaint, pp. 31, 35). Second, the Commissioner, like Alaska authorities in *Jacobus*, has said in so many words that he will soon initiate civil proceedings against NAGR. (*Id.*, pp. 48, 49.) Third, the Commissioner has a history of vigorously enforcing Montana's coordination and reporting laws, including a recent, high-profile civil case.[1] All three requirements needed for constitutional ripeness are therefore met.

NAGR's First Claim for Relief also satisfies the prudential component of the ripeness doctrine, which requires courts to consider (1) the fitness of the claims for judicial review and (2) the hardship to the plaintiff of withholding relief. *Wolfson,* 616 F.3d at 1060.[2] A claim is "fit" if "it is primarily legal and does not require substantial further factual development." *Id.* A "likelihood of prosecution creates hardship for the parties." *Jacobus*, 338 F.3d at 1105.

The issue raised by NAGR's First Claim for Relief – whether the Tutvedt

---

[1] See, *e.g.*, *Commissioner v. WTP (Wittich),* COPP-2010-CFP-032, posted at <http://politicalpractices.mt.gov/content/2recentdecisions/documents/Bonogofskyv WittichCOPP-2010-CFP-031>

[2] The Supreme Court has recently called into question the continued viability of the prudential component of ripeness. *Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334 (2014) ("To the extent respondents would have us deem petitioners' claims nonjusticiable on grounds that are prudential, rather than constitutional, that request is in some tension with our recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging") (internal punctuation omitted), quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386 (2014).

mailer constituted express advocacy – is primarily legal and does not require substantial further factual development. *FEC v. Wisconsin Right to Life*, 551 U.S. 449, 469 (2007) ("*WRTL*") (standard for determining whether a communication constitutes express advocacy "must be objective, focusing on the substance of the communication rather than amorphous considerations of intent and effect" and "must entail minimal if any discovery, to allow parties to resolve disputes quickly without chilling speech through the threat of burdensome litigation"). It is therefore fit for judicial review.

NAGR's claim satisfies the hardship requirement because the Commissioner has threatened it with a civil lawsuit. NAGR's First Claim for Relief therefore meets the prudential component of the ripeness doctrine.

The State's reliance on *United States v. Braren*, 338 F.3d 971 (9th Cir. 2003), is misplaced. That case involved contested administrative hearings between litigants over water rights for which further factfinding was needed. *Id.* at 975-76. It was therefore not "fit" for judicial review. NAGR's claim, by contrast, does not arise from administrative proceedings between two litigants. Rather, it arises from an investigation by the Commissioner that is now complete, thereby making this case "fit" for judicial review. Moreover, the Commissioner is now threatening a civil lawsuit, something that will clearly harm NAGR.

NAGR's First Claim for Relief satisfies both the constitutional and prudential components of the ripeness doctrine. The State's claim of unripeness must be rejected.

B. *Younger* Abstention Does Not Apply to NAGR's First Claim For Relief Because The Commissioner's Actions Are Not "Judicial In Nature"

The State asserts that this Court should abstain from reviewing NAGR's First Claim for Relief. (Doc. 14, p. 6). The abstention rule established in *Younger v. Harris,* 401 U.S. 37 (1971), however, only applies to state proceedings that are "judicial in nature." *New Orleans Public Service, Inc. v. City of New Orleans*, 491 U.S. 350, 370 (1989) ("*NOPSI*"); *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 627 n.2 (1986) ("if state law expressly indicates that the administrative proceedings are not even 'judicial in nature,' abstention may not be appropriate"). A proceeding is "judicial in nature" if it "investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." *NOPSI*, 491 U.S. at 370 (citations omitted). This requires an opportunity for parties to be heard and present evidence to a neutral fact-finder. *Baffert v. California Horse Racing Bd*., 332 F.3d 613, 618 (9th Cir. 2003) (license revocation proceeding was "judicial in nature" because regulatory agency held an "adjudicatory hearing" and "both sides were represented by counsel"); see also *Gonzalez v. Waterfront Comm'n of New York Harbor*, 755 F.3d

6

176, 183 (2d Cir. 2014) (employee disciplinary proceeding was "judicial in nature" because an administrative law judge presided and "it afforded … an opportunity to be heard, the right to be represented by counsel, and the right to present evidence and witnesses on his behalf"); *Telco Communications, Inc. v. Carbaugh,* 885 F.2d 1225, 1228 (4th Cir. 1989) (*Younger* requires administrative proceedings to have "trial-like trappings," such as sworn testimony, cross-examination, and a record).

The Commissioner's review of a campaign-finance complaint filed by a private citizen, such as the one in this matter, is not judicial in nature because the Commissioner's task is "analogous to the prosecutorial work done by a county attorney." *Doty v. Commissioner of Political Practices*, 173 P.3d 700, 704 (Mont. 2007). None of the safeguards provided by the Montana Administrative Procedures Act (Title 2, Chapter 4, MCA) apply. Nor is there any other statute or regulation that provides a hearing officer for persons named in a campaign finance complaint or grants them a right to present evidence, cross-examine witnesses, or create a record.

The Commissioner's review of a campaign-finance complaint is also not "judicial in nature" because he lacks authority to impose penalties. Compare *San Jose Silicon Valley Chamber of Commerce PAC v. City of San Jose,* 546 F.3d 1087, 1089 (9th Cir. 2008) (*Younger* applied to proceedings by election commission authorized to issue public reprimands and assess fines) with

7

*Mulholland v. Marion County Election Board*, 746 F.3d 811, 817 (7th Cir. 2014); (*Younger* inapplicable because election board's "authority to sanction offenders is extremely limited – far less than the state proceedings that have warranted *Younger* abstention in other cases"). As with the state election law at issue in *Mulholland*, Montana law assigns authority to impose campaign finance penalties to courts, not the Commissioner. §§ 13-37-128 & 129, MCA. The Commissioner's lack of authority to impose penalties makes *Younger* inapplicable.

    C. <u>The State Has No Basis to Penalize NAGR Because the Tutvedt Mailer is Not Express Advocacy</u>

NAGR explained in its opening brief that communications such as the Tutvedt mailer are protected by the safe harbor established by the Supreme Court in *WRTL*. (Doc. 4, pp. 10-12). The State does not address whether the safe harbor applies in this case and instead simply claims that "it is reasonable to interpret the communication as a call to vote against Tutvedt." (Doc. 14, p. 10). Even if true, the State still loses on this issue because "a court should find that an ad is the functional equivalent of express advocacy *only if the ad is susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate*." *WRTL*, 551 U.S. at 469-70 (emphasis added); *id*. at 474 ("Where the First Amendment is implicated, the tie goes to the speaker, not the censor."). A reasonable person could view the Tutvedt mailer as exactly what it purports to be –

8

a criticism of a particular vote by a legislator and a call to action to convince him to apologize, thereby making it less likely the error will be repeated. The State does not claim that this interpretation is unreasonable – nor could it.

The Tutvedt mailer is not express advocacy and therefore not subject to regulation under Montana's pre-2015 campaign-finance laws. An injunction prohibiting the Commissioner from seeking penalties against NAGR for distributing the Tutvedt mailer in 2012 is therefore warranted.

II     THE FIRST AMENDMENT PROHIBITS THE IMPOSITION OF POLITICAL COMMITTEE BURDENS UPON GROUPS THAT DO NOT ENGAGE IN EXPRESS ADVOCACY

As noted in the opening brief, the Seventh Circuit has held that imposing political committee burdens on groups engaged in issue advocacy violates the First Amendment. *Wisconsin Right to Life v. Barland*, 751 F.3d 804, 837-38; *id*. at 839 ("the [Supreme] Court "has never endorsed imposing full, formal PAC-like burdens on" speakers whose major purpose is not express advocacy). The State contends that *Yamada v. Snipes*, 786 F.3d 1182 (9th Cir. 2015) controls this case. Doc. 14, p. 9. The Hawaii regulation at issue in *Yamada*, however, applied only to organizations engaged in express advocacy – they did not extend, as Montana's does, to groups engaged in issue advocacy. *Yamada*, 786 F.3d at 1199 n. 8.

The State also argues that Montana's political committee burdens are less onerous than the Wisconsin regulations at issue in *Barland* because some Montana

groups qualify as "incidental committees" with only "minimal" burdens. (Doc. 14, pp. 10-11, citing *Nat'l Assn. For Gun Rights v. Murry*, 969 F.Supp.2d 1262, 1270 (D. Mont. 2013). That might have been true prior to 2015 when incidental committees did not have to disclose the identities of their contributors. Because of the enactment SB-289 in 2015, however, incidental committees now have to report contributions obtained as a result of appeals to fund, *inter alia*, electioneering communications, *i.e.,* communications that simply include the name of a candidate. § 13-37-232(4), MCA. Because it is impossible for NAGR to segregate such contributions from those that do not fall within § 13-37-232(4), MCA, NAGR would have to report all of its contributions in order to comply with current Montana law even if NAGR were to be classified as an incidental committee.[3] The regulatory burden NAGR faces is therefore as onerous as that faced by other Montana political committees, (Doc. 4, pp. 7-8), as well as the Wisconsin political committees in *Barland*.

Finally, it should be noted that the State's argument is premised upon a questionable assumption: exacting scrutiny is less rigorous than strict scrutiny. The Supreme Court's recent pronouncements on this issue are to the contrary. See, *e.g.*, *McCutcheon v. Fed. Election Comm'n*, 134 S.Ct. 1434, 1444, 1446 (2014) ("the plain meaning of the terms 'exacting' and 'closest' imply a level of review

---

[3] See Warrington Declaration, attached as Exhibit 1.

more stringent than 'intermediate' scrutiny, and therefore '[u]nder exacting scrutiny, the Government may regulate protected speech only if such regulation promotes a compelling interest and is the least restrictive means to further the articulated interest."). Regardless of how the State's burden is phrased, the State has failed to prove that imposing onerous political committee burdens on groups that engage only in issue advocacy (and spend as little as $250 doing so) is necessary to achieve a compelling or even important state interest. By contrast, the electioneering law upheld in federal elections applied only to groups spending over $10,000 and amounted to a "one-time event-driven disclosure rule" that is "far less burdensome that the comprehensive registration and reporting system imposed on political committees." *Barland*, 751 F.3d at 825, citing 2 U.S.C. § 434(f). Montana's far more onerous burdens do not withstand First Amendment scrutiny.

III   THE COMPELLED-VOTE-REPORTING PROVISION IS SUBJECT TO STRICT SCRUTINY

NAGR demonstrated in its opening brief that the Compelled-Vote-Reporting provision, § 13-35-225(3), MCA, is subject to strict scrutiny because it is content-based and compels unwanted speech by those desiring to criticize an incumbent's voting record. (Doc. 4, pp. 18-23.). The State disagrees, and claims the provision should be subject to less demanding scrutiny. (Doc. 14, pp. 12-14).

The Ninth Circuit's decision in *ACLU v. Heller*, 378 F.3d 979, 992 (9th Cir. 2004) completely undermines the State's argument. *Heller* involved a Nevada law requiring entities publishing election-related communications to disclose within the communications the names and addresses of the publications' financial sponsors. The Ninth Circuit declared that "a regulation that alters or impairs the political message is subject to strict scrutiny." *Id.* at 992 (citations omitted). Forcing speakers to include within their communications the names of their financial backers was a "communication-altering requirement." *Id.* at 994. The court contrasted this to an "off-communication reporting of expenditures," *i.e.*, a separate report to the government that "does not involve the direct alteration of the content of a communication" and is therefore subject to less demanding scrutiny. *Id.*

Like the regulation in *Heller*, Montana's Compelled-Vote-Reporting provision clearly alters speakers' communications by forcing them to include documentation of votes when they criticize an incumbent's voting record. This requirement distorts and dilutes messages, and makes them more expensive to convey, particularly ones sent by regular mail. The Compelled-Vote-Reporting provision is therefore subject to strict scrutiny.

The State mistakenly relies upon the Supreme Court's ruling in *Citizens United v. FEC,* 558 U.S. 310 (2010) upholding a disclaimer regulation in arguing

12

that less demanding scrutiny is required. The disclaimer approved in *Citizens United*, however, simply required that political advertisements broadcast on television (it did not apply to written communications) identify the party responsible for the content of the advertising. *Id.* at 366. This one-sentence disclaimer did not alter the broadcaster's message. The State also errs in relying upon *Human Life v. Brumsickle*, 624 F.3d 990 (9th Cir.2010), which upheld Washington state's regulations requiring political speakers to report to the government the amount spent on communications. *Id.* at 1005. None of the regulations upheld in *Brumsickle* required speakers to alter their communications.

Because strict scrutiny applies to this case, the State must (1) offer a compelling interest in forcing speakers to alter their political messaging and (2) explain how the Compelled-Vote-Reporting provision is narrowly tailored to achieve that interest. While the State may have an important interest in providing voters with information, the State cites no authority showing that this interest is a *compelling* one.

Moreover, the Compelled-Vote-Reporting provision is not narrowly tailored, or even substantially related, to the government's interest in providing information to voters. Disclaimer and disclosure regulations such as those upheld in *Citizens United* and *Brumsickle* provide voters with information about the identity of the

13

speakers and the amount of their expenditures. This is information voters cannot obtain from any other source.

The information concerning incumbents' voting records, by contrast, is easily obtainable from a government website: www.leg.mt.gov. According to the State, however, this is not convenient enough for voters because they should not have to do their own online research but instead have voting record information included with the election communication -- at the speaker's expense, of course. (Doc. 14, p. 14). Otherwise, a "citizen may become confused." (Doc. 14, p. 14). The State's patronizing attitude does not satisfy the First Amendment's narrow tailoring requirement. The Compelled-Vote-Reporting provision must be struck down.

## **CONCLUSION**

For all of the foregoing reasons, NAGR respectfully requests that this Court grant its motion for a preliminary injunction.


DATED: May 2, 2016

>Respectfully submitted,
>
>/s/ Matthew G. Monforton
>Matthew G. Monforton
>
>Attorney for Plaintiff
>National Association For Gun Rights

# CERTIFICATE OF COMPLIANCE PURSUANT TO L. R. 7.1(d)(2)(E)

      I hereby certify that this document, excluding caption and certificate of compliance, contains 3154 words, as determined by the word count of the word processing software used to prepare this document, specifically Microsoft Word 2007.

DATED: May 2, 2016

                              Respectfully submitted,

                              /s/ Matthew G. Monforton
                              Matthew G. Monforton

                              Attorney for Plaintiff
                              National Association For Gun Rights

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY this 2nd day of May, 2016, that a copy of the foregoing will be delivered this day via the Court's ECF system to the following:

TIMOTHY C. FOX Montana Attorney General
J. STUART SEGREST
Assistant Attorneys General
Deputy Attorney General
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
ssegrest@mt.gov


DATED: May 2, 2016

                              Respectfully submitted,

                              /s/ Matthew G. Monforton
                              Matthew G. Monforton

                              Attorney for Plaintiff
                              National Association For Gun Rights