Matthew G. Monforton  (Montana Bar # 5245)
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718
Telephone:  (406) 570-2949
E-mail:     matthewmonforton@yahoo.com

Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MONTANA**

| | |
|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> JONATHAN MOTL, in his official capacity as the Commissioner of Political Practices for the State of Montana; TIMOTHY C. FOX, in his official capacity as Attorney General for the State of Montana; LEO GALLAGHER, in his official capacity as County Attorney for the County of Lewis & Clark, <br><br> Defendants. | Case No: CV 16-23-H-DLC <br><br> (Consolidated with CV 16-33-H-DLC) <br><br> **PLAINTIFF'S PRELIMINARY PRETRIAL STATEMENT** |

**A.    FACTUAL OUTLINE OF THE CASE (L.R. 16.2(b)(1)(A))**

NAGR is a non-stock, non-profit organization incorporated under the laws of the Commonwealth of Virginia in 2000.  It is a grassroots organization whose mission is to defend the constitutional right to keep and bear arms, and advance

that constitutional right by educating the American people and urging them to action in the public policy arena.

NAGR's mission is to defend American's Second Amendment "right to keep and bear arms" and to educate the public on issues related to the Second Amendment so that the public may participate meaningfully in dialogue and debate about the "right to keep bear arms." An important part of NAGR's activities consist of letting the public know where legislators and governmental officials stand on issues related to the Second Amendment and the "right to keep and bear arms."

NAGR also performs other acts necessary or incidental to the above and does whatever it deems necessary, useful, advisable, or conducive, directly or indirectly, to carry out any of the purposes of the corporation, as set forth in its articles of incorporation, including the exercise of all other powers and authority enjoyed by non-profit corporations generally.

NAGR is a tax-exempt social welfare organization under Internal Revenue Code § 501(c)(4) and complies fully with all IRS regulations. NAGR has approximately 36,000 members and supporters in Montana and 4.5 million members and supporters throughout the United States.

Many public officials, particularly in states with large numbers of rural voters, inaccurately claim to strongly support the rights of citizens to keep and bear

arms as well as to engage in lawful self-defense. NAGR seeks to inform the public of the identities of these officials, as well as provide the public with information about their voting records.

If permitted to do so without being subject to the challenged provisions of SB-289, NAGR intends to mail educational literature to Montanans in April and May of 2018 identifying public officials who have supported the rights of citizens to keep and bear arms and engage in lawful self-defense, as well as those who have not. NAGR intends to incur costs well in excess of $250 (mainly printing and mailing) to execute its plan to mail these postcards.

NAGR will not distribute such literature, however, if that literature will be deemed by the State to be an "election communication" or "electioneering communication" under §§ 13-1-101(14) & (15), thereby requiring NAGR to register as a political committee.

Plaintiff J.C. Kantorowicz filed a separate suit containing a single count identical to Count III of NAGR's complaint. This Court's issuance of a preliminary injunction has provided Plaintiff Kantorowicz the relief he sought. He therefore does not intend to litigate this matter any further except to arrange for the preliminary injunction to be made permanent and to recover his fees and costs.

**B.     Jurisdiction and Venue (L.R. 16.2(b)(1)(B))**

This Court has jurisdiction over this case arising under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the Constitution of the United States. 28 U.S.C. §§ 1331, 1343(a). This Court also has jurisdiction under the Declaratory Judgment Act. 28 U.S.C. §§ 2201, 2202. Venue is proper because Defendants reside in the Helena District.

**C.     NAGR's Factual Bases for Its Claims (L.R. 16.2(b)(1)(C)**

Count I of NAGR's complaint alleged that Defendants were likely to file suit against NAGR for distributing mailers to voters during a 2012 primary election. The parties agree that the statute of limitations for Defendant Motl to file a state action against NAGR arising from these mailers has expired and Count I is now moot.

Count III involves a facial challenge by NAGR as well as Plaintiff Kantorowicz regarding Montana's compelled vote-reporting provision, § 13-35-225(3), MCA. This Court issued a preliminary injunction prohibiting Defendants from enforcing the provision. Defendants have stated that they do not intend to further defend the provision. Plaintiffs NAGR and Kantorowicz may confer with Defendants in the near future concerning a possible stipulation to the entry of a permanent injunction by this Court concerning § 13-35-225(3), MCA.

Count II constitutes a pre-enforcement challenge to Montana's new regulations concerning "electioneering communications," by which the State purports to regulate any communication made within 105 days of an election that merely includes the name of a candidate. NAGR intends to distribute mailers during the primary election in 2018 that apprise voters of the positions candidates have taken on issues of importance to gun owners. NAGR's communications will not support or oppose the election of candidates. NAGR will not make such communications, however, if they will be subject to Montana's "electioneering communication" statutory provisions.

**D. Plaintiff's Legal Theory for Its Claims (L.R. 16.2(b)(1)(D)**

Plaintiff NAGR's legal theory as to Count II is based upon the fact that political speech is "indispensable to decisionmaking in a democracy, and this is no less true because the speech comes from a corporation rather than an individual." *Citizens United v. FEC*, 558 U.S. 310, 349 (2000). This heightened protection applies regardless of whether the speaker is an individual or an entity:

> The Court has thus rejected the argument that political speech of corporations or other associations should be treated differently under the First Amendment simply because such associations are not "natural persons."

*Id.* at 343, quoting *First Natl' Bank of Boston v. Bellotti*, 435 U.S. 765, 776 (1978).

Overbroad statutes that restrict substantial amounts of protected speech are

subject to being invalidated under the First Amendment. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 944 (9th Cir. 2011) (en banc). In such cases, the state "bears the burden of proving the constitutionality of its actions." *Id.* Because a campaign-finance law "operate[s] in a core free-speech zone and directly target[s] protected speech… we don't need to ask whether [it] reaches a substantial amount of protected speech; by definition, it does." *Wisconsin Right to Life, Inc. v. Barland,* 751 F.3d 804, 836 (7th Cir. 2014).

Disclosure regulations concerning campaign speech are subject to exacting scrutiny – thereby requiring the state to show that they are substantially related to an important government interest. *Human Life of Washington, Inc. v. Brumsickle*, 624 F.3d 990, 1005 (9th Cir.2010). In reviewing political speech regulations, the Supreme Court has long distinguished between those applicable to express advocacy (and its functional equivalent) and those applicable to issue advocacy. *Buckley v. Valeo*, 424 U.S. 1, 43-44 (1976); *WRTL,* 551 U.S. at 469-70. Political speech constitutes express advocacy or its functional equivalent "only if the ad is susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate." *WRTL,* 551 U.S. at 470. Political speech falling outside this category constitutes issue advocacy for which virtually any content-based regulation is unconstitutional.

The Supreme Court permits imposition of political committee burdens upon groups engaged in express advocacy or its functional equivalent, but has long rejected imposing them upon "groups engaged purely in issue discussion." *Buckley*, 424 U.S. at 79. This is because "compelled disclosure, in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment." *Id.* at 64. Political committees are "burdensome," "expensive to administer," and must comply with extensive regulations "just to speak." *Id.*; see also *Citizens United*, 558 U.S. at 337 (describing federal political committee requirements as "burdensome" because committees "must appoint a treasurer, forward donations to the treasurer promptly, keep detailed records of the identities of the persons making donations, preserve receipts for three years, and file an organization statement and report changes to this information within 10 days"); *FEC v. Mass. Citizens for Life, Inc. (MCFL),* 479 U.S. 238, 252–56 (1986) (declaring federal political committee requirements a "restriction on speech" that is "substantial").

Montana's political committees must comply with numerous regulations that inevitably chill many small groups that aren't willing to cut through Montana's red tape in order to simply convey a political message. *MCFL,* 479 U.S. at 255 ("Faced with the need to assume a more sophisticated organizational form, to adopt specific accounting procedures, to file periodic detailed reports . . . it would not be

surprising if at least some groups decided that the contemplated political activity was simply not worth it"); *Minnesota Citizens Concerned for Life, Inc. v. Swanson,* 692 F.3d 864, 874 (8th Cir.2012) (Minnesota's law "manifestly discourages associations, particularly small associations with limited resources, from engaging in protected political speech"). This chill deprives citizens of speech upon which to evaluate issues of public importance.

The Seventh Circuit in *Barland* recently held that a Wisconsin statute imposing political committee burdens upon issue advocacy groups was unconstitutionally overbroad. *Barland,* 751 F.3d at 838. The court determined that, during the 60-day period before a general election (and the 30-day period before a primary election) in which the statute applied, essentially all political speech about issues triggered political committee regulations if a speaker said "pretty much anything at all" about a candidate for office. *Id*. at 836-37. Given the significant expense, burden, and chilling effect of political committee regulations on ordinary citizens, grassroots issue-advocacy groups, and § 501(c)(4) social-welfare organizations, Wisconsin's statute was substantially overbroad. *Id.* at 837-38.

The Ninth Circuit has also expressed concerns, albeit in dicta, about imposing political committee regulations upon groups engaged solely in issue advocacy. In *Brumsickle,* the court upheld a Washington state statute requiring

groups expressly advocating passage of ballot initiatives to register as political committees. In so doing, however, it noted that "there is less danger of a regulation sweeping too broadly in the context of a ballot measure than in a candidate election." *Brumsickle*, 624 F.3d at 1018. With ballot initiatives, "the only issue advocacy that could potentially be regulated is advocacy regarding the single issue put before the public." *Id.* Notably, the Ninth Circuit observed the risk of Washington's statute regulating issue advocacy "*would engender far more concern if the relevant election involved a candidate." Id.* (emphasis added).

The Ninth Circuit's concerns about regulating issue advocacy are particularly relevant to this case. Montana's "electioneering communication" provisions, like the Wisconsin provisions struck down in *Barland*, regulate issue advocacy – except Montana's are far broader. The Seventh Circuit held Wisconsin's electioneering provisions overbroad because they applied to any speaker who said "pretty much anything at all" about a candidate for office. *Barland,* 751 F.3d at 836-37. Montana's electioneering communication provisions don't just apply to "pretty much anything" said about a candidate – they literally apply to any reference about a candidate. § 13-1-101(15)(i) & (ii), MCA. Moreover, they also apply to any reference to a political party. § 13-1-101(15)(iii), MCA. Thus, any group that makes any communication within 60 days of an

election containing the name of candidate or a political party is now forced to comply with Montana's burdensome political regulations.

While Wisconsin's electioneering statute attempted to regulate only speech that discussed a candidate's qualifications, Montana's regulations have limitless reach over communications made within 105 days of an election if the communication simply contains the name of a candidate or party. Thus, if Wisconsin's more narrowly-tailored statute is unconstitutionally overbroad, it follows, *a fortiori*, that Montana's broader statute is, too.

### E.   Computation of Damages (L.R. 16.2(b)(1)(E))

Plaintiff NAGR does not seek damages.

### F.   Pendency of Related State or Federal Litigation (L.R. 16.2(b)(1)(F))

This Court currently has before it *Montanans for Community Development v. Motl*, CV 14-55-H-DLC, which raises similar issues.

### G.   Plaintiff's Proposed Stipulations of Fact and Understanding of Applicable Law (L.R. 16.2(b)(1)(G))

Because this case involves claims based upon the First Amendment, Plaintiff understands the applicable law to be federal law for both procedural and substantive issues.

The parties have not been able to agree on a joint statement of stipulated

facts. That said, Plaintiff NAGR intends to move for summary judgment based upon facts presented by declarations and does not expect Defendants to credibly argue that any material issues of fact are in dispute.

**H.     Proposed Deadlines Regarding Joinder and Amendment of Pleadings (L.R. 16.2(b)(1)(H))**

In their Joint Discovery Plan, the parties have recommended deadlines to the Court for joinder of parties and amendment of pleadings. Plaintiff is amenable to other dates the Court might prefer.

**I.     Issues of Law Suitable for Pre-Trial Disposition (L.R. 16.2(b)(1)(I))**

Plaintiff NAGR believes the constitutionality of Montana's statutory provisions concerning electioneering communications is an issue of law that can and should be decided on cross-motions for summary judgment.

**J.     Name of Individuals Believed to Have Relevant Information (L.R. 16.2(b)(1)(J))**

1. Dudley Brown
2. David Warrington

**K.     Substance of Any Applicable Insurance (L.R. 16.2(b)(1)(K))**

None.

**L.      Status of Settlement Discussions (L.R. 16.2(b)(1)(L))**

The parties have discussed the possibility of stipulating to a permanent injunction regarding Count III.  The parties agree that Count I is moot.  Plaintiff NAGR does not believe Count II can be resolved except by a final judgment by this Court and, in all likelihood, subsequent appellate proceedings brought by the non-prevailing party.

**M.      Suitability of Special Procedures (L.R. 16.2(b)(1)(M))**

Plaintiff does not anticipate any special procedures being needed for this action.

DATED: October 18, 2016

                                        Respectfully submitted,

                                        <u>/s/ Matthew G. Monforton</u>
                                        Matthew G. Monforton

                                        Attorney for Plaintiff
                                        National Association For Gun Rights

# CERTIFICATE OF SERVICE

      I HEREBY CERTIFY this 18th day of October, 2016, that a copy of the foregoing will be delivered this day via the Court's ECF system to the following:


J. STUART SEGREST
Assistant Attorneys General
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Phone: (406) 444-2026,
Fax: (406) 444-3549
ssegrest@mt.gov


DATED: October 18, 2016

                Respectfully submitted,

                /s/ Matthew G. Monforton
                Matthew G. Monforton

                Attorney for Plaintiff
                National Association For Gun Rights