Matthew G. Monforton (Montana Bar # 5245)
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718
Telephone: (406) 570-2949
Facsimile: (406) 551-6919
Email: matthewmonforton@yahoo.com

David A. Warrington
LeClairRyan, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, Virginia 22314
Telephone: (703) 647-5926
Facsimile: (703) 647-5966
Email: david.warrington@leclairryan
(pending approval of pro hac vice admittance)

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA

| | | |
|---|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., | ) ) ) | Case No. CV 16-0023-H-DLC |
| Plaintiff, | ) ) | MEMORANDUM IN SUPPORT OF PLAINTIFF'S |
| JONATHAN MOTL, in his official Capacity as the Commissioner of Political Practices for the State of Montana; TIMOTHY C. FOX, in his Official capacity as Attorney General For the State of Montana; LEO GALLAGHER, in his official capacity as County Attorney for the County of Lewis & Clark, | ) ) ) ) ) ) ) ) ) ) | MOTION FOR SUMMARY JUDGMENT |
| Defendants. | ) | |

Plaintiff, National Association for Gun Rights ("NAGR"), submits this

Memorandum in Support of its Motion for Summary Judgment.

## Introduction

This case is about a state's attempt to impermissibly regulate issue advocacy

speech under the guise of campaign finance reform. It stems from the provisions

of SB-289, enacted by the Montana Legislature and effective as of October 1,

2015.

NAGR is a grassroots organization whose mission is to defend the "right to

keep and bear arms" and educate the public on issues related to the Second

Amendment. One way NAGR accomplishes this task is by letting the public know

where government officials stand on issues related to the Second Amendment

through informational mailings. NAGR desires to mail such educational literature

to Montanans. The literature describes officials who have supported the Second

Amendment and those who do not and educates citizens about those officials'

actual voting records; however, it will not advocate for or against a candidate for

office. It is traditional issue advocacy. It is the most fundamental type of First

Amendment protected political speech.

"Discussion of public issues and debate on the qualifications of candidates

are integral to the operation of the systems of government established by our

constitution." *Buckley v. Valeo*, 424 U.S. 1, 14 (1976). Freedom to speak is a core

First Amendment value. Montana law, however, is designed to burden this cherished right on the eve of an election, when the electorate's ear is most inclined to listen, and when the speech is most likely to make a difference. The "electioneering communications" definition encompasses all speech that mentions the name of a Montana candidate or political party within 105 days of an election. Groups that make such communications must register as a "political committee" if a small monetary threshold is triggered. Further, anyone who dares to criticize an incumbent's voting record is compelled to make extensive speech relating to voting records, information already publically available. These statutes impose impermissible asymmetric burdens on speakers like NAGR who engage in long protected issue advocacy. NAGR is entitled to summary judgment because (1) the definition of "electioneering communications" and the accompanying regulations are overly broad; and (2) the compelled-vote-reporting provision is unconstitutional.

## Statement of Undisputed Facts

In support of its Motion for Summary Judgment, NAGR submits the following Statement of Undisputed Facts:

## The Parties

### *Plaintiff*

1.      The National Association for Gun Rights ("NAGR") is a Virginia non-profit corporation, with a principal place of business in Colorado.  Dkt No. 1 at ¶ 15.

2.      NAGR is a grassroots organization whose mission is to "defend the right to keep and bear arms, and advance that God-given Constitutional right" by educating the public and "urging them to take action in the public policy process."  Dkt No. 1 at ¶ 20.

3.      NAGR is exempt from federal income taxes as a social welfare organization under 26 U.S.C. § 501(c)(4).  Dkt No. 1 at ¶ 22.

4.      Organizations under § 501(c)(4) must be "primarily engaged in promoting in some way the common good and general welfare of the people of the community."  (26 C.F.R. § 501(c)(4)-1).  Further, "[t]he promotion of social welfare does not include direct or indirect participation or intervention in political campaigns on behalf of or in opposition to any candidate for public office."  *Id.*  Dkt No. 1 at ¶ 23.

5.      NAGR is in compliance with this requirement and will remain so in the future.  Dkt No. 1 at ¶ 24.

6. NAGR has 36,000 members and supporters in Montana and 4.5 million members in the United States. Dkt No. 1 at ¶ 25.

*Defendants*

7. Jonathan Motl ("Motl") is the Commissioner of Political Practices for Montana. Dkt No. 1 at ¶ 16.

8. As Commissioner of Political Practices, Motl has the authority to investigate violations of, enforce the provisions of, and hire attorneys to prosecute violations of Montana's campaign finance laws. Dkt No. 1 at ¶ 16.

9. Timothy Fox ("Fox") is the Attorney General for Montana. Dkt No. 1 at ¶ 17.

10. As Attorney General, Fox has power to investigate and prosecute violations of Chapter 35 of the Montana Code Annotated by and through the county attorneys under his supervision. Dkt No. 1 at ¶ 17.

11. Leo Gallagher ("Gallagher") is the Lewis & Clark County Attorney. Dkt No. 1 at 18.

12. As Lewis & Clark County Attorney, Gallagher has power to investigate and prosecute violations of Chapter 35 of the Montana Code Annotated. Dkt No. 1 at 18.

*The Consolidated Plaintiff*

13.     J.C. Kantorowicz asserts that Mont. Code Ann. § 13-35-225(3) is unconstitutional and has filed suit in a separate case, *Kantorowicz v. Motl, et al.,* Case No. CV 16-33-H-DLC-JTJ (the "Kantorowicz Case").  Dkt No. 17 at 1-2.

14.     On May 23, 2016, the Court ordered this case and the Kantorowicz Case be consolidated for all pretrial purposes.  Dkt No. 17 at 2.

**NAGR's Mailings**

15.     An important part of NAGR's activities is letting the public know where legislators stand on issues related to the Second Amendment and the "right to keep and bear arms."  Dkt No. 1 at ¶ 21.

16.     NAGR seeks to inform the public about officials and their voting records.  Dkt No. 1 at ¶ 27.

17.     NAGR intends to mail educational literature to Montanans beginning in May 2018 describing which public officials have supported the rights of citizens to keep and bear arms and engage in self-defense, and those who do not.  Brown Aff.  at ¶ 6.

18.     This educational literature is materially similar to the mailer attached as Exhibit 1 to the Verified Complaint.  Dkt No. 1 at ¶ 31, Ex. 1; Brown Aff.  at ¶ 4.

19.     NAGR will spend more than $250.00 to mail this educational literature.  Dkt No. 1 at ¶ 32.

20.     NAGR does not desire to distribute this educational literature if it will be deemed an "electioneering communication" as defined in Mont. Code Ann. § 13-1-101(15), thereby requiring NAGR to register as a "political committee" in Montana.  Dkt No. 1 at ¶ 34.

21.     NAGR does not desire to distribute this educational literature if NAGR will be required to include the compelled speech required by Mont. Code Ann. § 13-35-225(3)(a).  Dkt No. 1 at ¶ 35.

### "Electioneering Communications" and Applicable Regulations

22.     In 2015, the Montana Legislature enacted SB-289.  Dkt No. 1 at ¶ 30.

23.     SB-289 creates a new category of speech subject to regulation, known as "electioneering communications."  Dkt No. 4 at 6.

24.     Section 13-1-101(15)(a), MCA, defines "electioneering communication" as "a paid communication that is publically distributed by radio, television, cable, satellite, internet website, newspaper, periodical, billboard, mail, or any other distribution of printed materials, that is made within 60 days of the initiation of voting in an election, that does not support or oppose a candidate or ballot issue, that can be received by more than 100 recipients in the district voting on the candidate or ballot issue, and that: (i) refers to one or more clearly identified

7

candidates in that election; (ii) depicts the name, image, likeness, or voice of one or more clearly identified candidates in that election; or (iii) refers to a political party, ballot issue, or other question submitted to the voters in that election."  Dkt No. 1 at ¶ 57.

25.     In Mont. Admin. R. 44.11.605(2), Motl interpreted the phrase "within 60 days of the initiation of voting" in Mont. Code Ann. § 13-1-101(15) to mean 60 days before the date in which absentee ballots are mailed to electors.  Dkt No. 4 at 6, n.4.

26.     Pursuant to Mont. Code Ann. § 13-13-205(2), Montana mails absentee ballots to military and overseas electors no later than 45 days in advance of an election.  Dkt No. 4 at 6, n.4.

27.     Thus, for most elections, Montana regulates electioneering communications for a 105 day period before Election Day.  Dkt No. 4 at 6, n. 4.

28.     Any group that mentions the name of a Montana candidate, or a political party, within 105 days of most elections makes an "electioneering communication."  Mont. Code Ann. § 13-1-101(30)(a) and (d).  Dkt No. 4 at 6.

29.     Pursuant to Mont. Code Ann. § 13-1-101(30) group that makes an "electioneering communication" and spends more than $250 on the communication must register as a "political committee."  Dkt No. 4 at 6.

30.    Political committees must comply with a variety of regulations, including: registration (Mont. Code Ann. § 13-37-201(b)), appointment of a campaign treasurer (Mont. Code Ann. §§ 13-37-201 to 204), creation of a campaign depository (Mont. Code Ann. § 13-37-205), record keeping requirements (Mont. Code Ann. §§ 13-37-207 to 208), and various reporting requirements (Mont. Code Ann. §§ 13-37-225 to 231), Mont. Admin. R. 33.11.301 to 44.11.506. Dkt No. 1 at ¶ 58.

31.    Pursuant to Mont. Code Ann. § 13-1-101(23), a political committee whose major purpose is to accept contributions and make expenditures is an "independent committee."  Dkt No. 4 at 14.

32.    Independent committees must identify all of its contributors who give $35 or more to the committee.  Mont. Code Ann. § 13-37-229(1).  Dkt No. 4 at 14-15.

33.    Pursuant to Mont. Code Ann. § 13-1-101(24), a political committee that does not support or oppose candidates as its major purpose is an "incidental committee."  Dkt No. 4 at 15.

34.    Incidental committees must identify all contributors whose contributions are earmarked for communications supporting a specific candidate or made in response to an appeal by the incidental committee for contributions to support its election activity.  Mont. Code Ann. § 13-37-232(1).  Dkt No. 4 at 15.

**Compelled-Vote-Reporting Provision**

35.     Mont. Code Ann. § 13-35-225(3)(a) (the "Compelled-Vote-Reporting Provision"), requires printed election material "that includes information about another candidate's voting record" to also include the following: "(i) a reference to the particular vote or votes upon which the information is based; (ii) a disclosure of all votes made by the candidate on the same legislative bill or enactment; and (iii) a statement, signed as provided in subsection (3)(b), that to the best of the signer's knowledge, the statements made about the other candidate's voting record are accurate and true."  Dkt No. 1 at ¶ 64.

36.     Violations of the Compelled-Vote-Reporting Provision may result in fines and penalties pursuant to Mont. Code Ann. § 13-37-128.  Dkt No. 1 at ¶ 68; Dkt No. 4 at 9.

37.     The Montana legislature previously enacted versions of the Compelled-Vote-Reporting Provision that were struck down in litigation and subsequently revised.  Dkt No. 4 at 15.

38.     SB-289 revised the statute again in 2015.  Dkt No. 4 at 15.

39.     Montana has an online database, http://leg.mt.gov/css/default.asp, enabling voters to examine voting records of candidates.  Dkt No. 4 at 30.

**Argument**

### I.   Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

### II.   Montana's Regulations Governing "Electioneering Communications" are Substantially Overbroad.

Political speech is "indispensable to decisionmaking in a democracy, and this is no less true because the speech comes from a corporation rather than an individual." *Citizens United v. FEC*, 558 U.S. 310, 349 (2010) (citation omitted). This heightened protection applies regardless of whether the speaker is an individual or entity. *Id.* at 343. ("The Court has thus rejected the argument that political speech of corporations or other associations should be treated differently under the First Amendment simply because such associations are not 'natural persons.'").

Overbroad statutes that restrict substantial amounts of protected speech are subject to invalidation under the First Amendment. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 944 (9th Cir. 2011) (en banc). In such cases, the state "bears the burden of proving the constitutionality of

its actions." *Id.* (citation omitted). Because campaign finance law "operate[s] in a core free-speech zone and directly target[s] protected speech . . . we don't need to ask whether the challenged law reaches a substantial amount of protected speech; by definition, it does." *Wisconsin Right to Life, Inc. v. Barland*, 751 F.3d 804, 836 (7th Cir. 2014). Disclosure regulations concerning campaign speech are subject to exacting scrutiny—requiring the state to show they are substantially related to an important government interest. *Human Life of Washington, Inc. v. Brumsickle*, 624 F.3d 990, 1005 (9th Cir. 2010).

Political speech constitutes "express advocacy" or its functional equivalent "only if the ad is susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate." *Wisconsin Right to Life, Inc. v. FEC*, 551 U.S. 449, 469-70 (2007). Political speech *outside* this category is "issue advocacy", for which virtually any content-based regulation is unconstitutional. The Supreme Court has long rejected imposing burdens upon groups engaged purely in issue discussion, like NAGR. *Buckley*, 424 U.S. at 79-80; *Wisconsin Right to Life, Inc*, 551 U.S. 469-70. Yet, this is exactly the type of issue-driven political expression that is improperly regulated under Montana's statutory scheme.

The statute encompasses a vast array of political speech because of how it defines "electioneering communications." Any group that merely *mentions* the

name of a Montana candidate, or political party, within 105 days[1] of most elections makes an "electioneering communication." *See* Mont. Code Ann. § 13-1-101(15). NAGR's educational literature will reference candidates and be distributed in the relevant time frame. Therefore, the communication satisfies the definition of "electioneering communication." If a group spends more than $250.00 on the "electioneering communication" it must also register as a "political committee". *See* Mont. Code Ann. § 13-1-101(30)(a) and (d). Because NAGR's "electioneering communications" will exceed the monetary threshold, it will have to register as a "political committee."

"Political committees" under Montana law must comply with a variety of registration and reporting requirements, including, but not limited to: registration (Mont. Code Ann. § 13-37-201(b)), appointment of a campaign treasurer (Mont. Code Ann. § § 13-37-201 to 204), creation of a campaign depository (Mont. Code Ann. § 13-37-205) and record keeping requirements (Mont. Code Ann. § 13-37-207 to 208). Additionally, political committees must disclose the identities of its contributors. *See* Mont. Code Ann. § § 13-1-101(22), 13-1-101(23), 13-37-229(1),

---

[1] The phrase "within 60 days of the initiation of voting" in § 13-1-101(15) has been interpreted to mean 60 days before the date in which absentee ballots are mailed to electors. *See* Mont. Admin. R. 44.11.605(2). Pursuant to Mont. Code Ann. § 13-13-205(2), Montana mails absentee ballots to military and electors no later than 45 days in advance of an election. Thus, for most elections, Montana regulates "electioneering communications" for a 105 day period before Election Day, rather than a 60 day period.

13-37-323(1).  It is this regulation of protected speech, outside of the government's power to regulate, that renders this definition of "electioneering communications" (and corresponding regulations) unconstitutionally overbroad.

Political committee requirements are onerous, and the Supreme Court has long rejected imposing them upon "groups engaged purely in issue discussion." *Buckley,* 424 U.S. at 79.  Political committees are burdensome, expensive to administer, and groups must comply with extensive regulations just to speak.  *See Citizens United*, 558 U.S. at 337-38 (describing various political committee requirements).  As recognized by the Court in *FEC v. Mass. Citizens for Life Inc.*, 479 U.S. 238, 255 (1986), "[f]aced with the need to assume a more sophisticated organizational form, to adopt specific accounting procedures, to file periodic detailed reports . . . it would not be surprising if at least some groups decided that the contemplated political activity was simply not worth it."

The Ninth Circuit has also expressed concerns, in dicta, about imposing political committee regulations on groups solely engaged in issue advocacy.  In *Brumsickle*, the court upheld a Washington statute requiring groups expressly advocating passage of ballot initiatives register as political committees.  However, it noted "there is less danger of a regulation sweeping too broadly in the context of a ballot measure than in a candidate election."  *Brumsickle*, 624 F.3d at 1018.  With ballot initiatives, "the only issue advocacy that could potentially be regulated

is advocacy regarding the single issue put before the public." *Id.* However, the risk of Washington's statute regulating issue advocacy "would engender far more concern if the relevant election involved a candidate." *Id.*

The Seventh Circuit recently examined this situation in *Barland*, where it struck down a Wisconsin campaign finance statute that, like SB-289, imposed political committee burdens on issue advocacy groups. *Barland*, 751 F.3d at 838. The court determined that, during the 60 day period before a general election (and 30 day period before a primary election) in which the statute applied, virtually all political speech about issues triggered political committee regulations if a speaker said "pretty much anything at all" about a candidate for office." *Id.* at 836-37. Given the significant expense, burden, and chilling effect of political committee regulations on ordinary citizens, grassroots issue-advocacy groups, and 501(c)(4) social-welfare organizations, the statute was overbroad. *Id.* at 837-38.

These concerns are particularly relevant here. The "electioneering communication" provisions, like *Barland*, regulate issue advocacy—except these are broader. Montana's electioneering communication provisions do not apply to "pretty much anything" said about a candidate – they literally apply to *anything* said about a candidate within 105 days of an election. *See* Mont. Code Ann. §§ 13-1-101(15)(i) & (ii), 13-13-205(2); Mont. Admin. R. 44.11.605(2)(a). They also apply to any communication referencing a political party. Mont. Code Ann. § 13-

1-101(15)(iii).  Thus, any group making any communication within 105 days of an election containing the name of a candidate or political party and satisfying the $250 monetary threshold is forced to comply with Montana's political committee regulations.  Mont. Code Ann. § 13-1-101(30).  By daring to mention a candidate shortly election, when voters are most inclined to hear its message, NAGR is saddled with political committee requirements.

In *Barland*, the electioneering statute attempted to regulate speech that discussed a candidate's qualifications.  Montana's regulations reach communications that contain the name of a candidate or party.  Thus, if Wisconsin's more narrowly tailored statute is unconstitutionally overbroad, it follows that Montana's far broader statute must be similarly unconstitutional.  The logic is inescapable.

## III.  Montana's Compelled-Vote-Reporting Provision is Unconstitutional.[2]

"The First Amendment generally prevents government from proscribing speech." *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 382 (1992) (citations omitted).  Further, proscriptions based on the content of the speech "are presumptively invalid." *Id.* (citations omitted).  "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert, Ariz.* 135

---

[2] Plaintiff NAGR notes Defendants' concession of this issue in their preliminary pretrial statement.  Dkt. No. 20 at 3.

S. Ct. 2218, 2227 (2015).  Laws that are content based on their face are subject to strict scrutiny.  *Id.* at 2227.  A law survives strict scrutiny only if it is narrowly tailored to a compelling state interest.  *Id.* at 2226.

Here, the statute makes a distinction between printed election materials that reference a candidate's vote and materials that do not.  Mont. Code Ann. § 13-35-225(3).  The vote disclosure requirement and affirmation the information is true and accurate, is triggered by reference to a candidate's voting record.  *Id.*  Thus, compelled speech is triggered only if a certain topic—the candidate's voting record—is raised.

A state's interest in providing information to voters may be an important one.  *Canyon Ferry Rd. Baptist Church v. Unsworth*, 556 F.3d 1021, 1032 (9th Cir. 2009) ("[W]e have little trouble concluding that Montana's informational interest is generally 'important' in the context of Montana's statewide ballot issues.")  However, providing information to voters concerning incumbent voting records is *not* a compelling interest.  Sparing politicians from wounded feelings is *not* a compelling state interest.  "[T]he First Amendment requires that politicians tolerate insulting, and even outrageous, speech in order to provide adequate breaching space to the freedoms protected by the First Amendment."  *Arizona Right toLlife Political Action Comm. v. Bayless*, 320 F.3d 1002, 1014 (2003) quoting *Boos v. Barry*, 485 U.S. 312, 322 (1988).

Even if there was a compelling governmental interest, the statute is not narrowly tailored to achieve its goal. Merely referring to a candidate's voting record could require the submission of a multi-page candidate voting history. *See* Mont. Code Ann. § 13-35-225(3). Speakers would then have to mail this information to Motl's office. However, it is unclear how a voter would actually access this information. Moreover, voting record information is already available through a publically supported website. *See* http://leg.mt.gov/css/Default.asp; *United States v. Alvarez* 132 S. Ct. 2537, 2551 (2012) (finding a statute regulating speech was not necessary where an internet database provided alternative means to regulation). Accordingly, the compelled-vote reporting provision cannot withstand strict scrutiny.

## Conclusion

WHEREFORE, the Plaintiff's Motion for Summary Judgment should be granted.

Dated: February 15, 2017

/s/ Matthew G. Monforton
Matthew G. Monforton (Montana Bar # 5245)
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718
Telephone: (406) 570-2949
Facsimile: (406) 551-6919
Email: matthewmonforton@yahoo.com

David A. Warrington
LeClairRyan, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, Virginia 22314
Telephone: (703) 647-5926
Facsimile: (703) 647-5966
Email: david.warrington@leclairryan
(pending approval of pro hac vice admittance)

Attorneys for Plaintiff

# CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2017, I electronically filed the foregoing **MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will send notice of such filing to counsel of record who are registered with CM/ECF.

Dated: February 15, 2017

/s/ Matthew G. Monforton
Matthew G. Monforton (Montana Bar # 5245)
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718
Telephone: (406) 570-2949
Facsimile: (406) 551-6919
Email: matthewmonforton@yahoo.com

David A. Warrington
LeClairRyan, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, Virginia 22314
Telephone: (703) 647-5926
Facsimile: (703) 647-5966
Email: david.warrington@leclairryan
(pending approval of pro hac vice admittance)

Attorneys for Plaintiff

## CERTIFICATE OF COMPLIANCE PURSUANT TO L.R. 7.1(D)(2)(E)

I hereby certify that this document, excluding caption and certificate of compliance, contains 3649 words, as determined by the word count of word processing software used to prepare this document, specifically Microsoft Word.

Dated: February 15, 2017

/s/ Matthew G. Monforton
Matthew G. Monforton (Montana Bar # 5245)
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718
Telephone: (406) 570-2949
Facsimile: (406) 551-6919
Email: matthewmonforton@yahoo.com

David A. Warrington
LeClairRyan, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, Virginia 22314
Telephone: (703) 647-5926
Facsimile: (703) 647-5966
Email: david.warrington@leclairryan
(pending approval of pro hac vice admittance)

Attorneys for Plaintiff