TIMOTHY C. FOX
Montana Attorney General
J. STUART SEGREST
MATTHEW T. COCHENOUR
Assistant Attorneys General
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
ssegrest@mt.gov; mcochenour2@mt.gov
Phone: (406) 444-2026, Fax: (406) 444-3549

COUNSEL FOR DEFENDANTS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA

| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., | Case No. CV 16-00023-H-DLC |
|---|---|
| Plaintiff, v. JONATHAN MOTL, in his official capacity as the Commissioner of Political Practices for the State of Montana, *et al.*, Defendants. | **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT** |

# INTRODUCTION

Defendants are entitled to summary judgment as to Plaintiff National Association for Gun Rights' (Plaintiff or NAGR) challenge to Montana's regulation of "electioneering communication," its second

claim for relief.  This Court has already granted summary judgment for Montana in a challenge to this definition, and its attending reporting requirements, in *Montanans for Community Dev. v. Motl*, CV 14-55-H-DLC, Doc. 176; 2016 U.S. Dist. LEXIS 150633 (D. Mont. Oct. 31, 2016) (*MCD*).  Here, for substantially the same reasons, Defendants are entitled to summary judgment.   Whether challenged under vagueness or overbreadth, the result is the same.  Exacting scrutiny applies, and this Court determined in *MCD* that Montana's regulation of "electioneering communication" meets exacting scrutiny.

Furthermore, Defendants are entitled to summary judgment as to Plaintiff's First Claim for Relief because the claim is moot.

## STATEMENT OF FACTS

Montana Code Annotated § 13-1-101(15) defines "electioneering communication" as:

> A publicly distributed, paid communication  (1) "that is made within 60 days of the initiation of voting in an election"; (2) "that does not support or oppose a candidate or ballot issue"; (3) "that can be received by more than 100 recipients in the voting district"; (4) and that either
> (i) "refers to one or more clearly identified candidates";
> (ii) depicts the name, image, likeness, or voice of one or more clearly identified candidates"; or

(iii) "refers to a political party, ballot issue, or other question submitted to the voters."

The attendant disclosure requirements only go into effect if the communication is made 60 days before voting begins. *Id.* The "initiation of voting in an election" has been defined by rule as the date absentee ballots are mailed or delivered, which equates to around 85 days prior to the day of the election, depending on the mailing date on the Montana Secretary of State's election calendar for the particular election. Doc. 33 (Motl Decl.); Mont. Admin. R. 44.11.605(2)(b) ("initiation of voting occurs when absentee ballot packets are mailed or otherwise delivered"); *see also* COPP-2016-AO-005 at 3[1] (referring to Montana Secretary of State election calendar to specify when absentee ballots are mailed). For the November 8, 2016 election, the "initiation of voting" was August 16, 2016, 84 days prior to Election Day.[2]

A group that engages in "electioneering communication" has made an "expenditure," Mont. Code Ann. § 13-1-101(17)(a)(ii), and qualifies as

---

[1] Located at: http://www.politicalpractices.mt.gov/content/5campaignfinance/2016-AO-005-Final-signed.pdf

[2] *Id.*; *see also* http://www.politicalpractices.mt.gov/content/2recentdecisions/SkokosvAmericansForProsperityDecision

a "political committee" if the expenditure is $250 or more. Mont. Code Ann. § 13-1-101(30). If the group "is not specifically organized or operating for the primary purpose of supporting or opposing candidates or ballot issues," then they need only register as an "incidental committee." Mont. Code Ann. § 13-1-101(22).

Registering as an incidental committee imposes only a minimal burden. Mont. Code Ann. §§ 13-37-226, -232; Doc. 14-2 (Motl Decl.), ¶¶ 7, 13, 18; *MCD* at 51. An incidental committee that does not receive or solicit earmarked contributions need only report its expenditures--it is not required to identify those who contributed to the committee. § 13-37-232(4). For a single expenditure, the committee may file a C-2[3] and C-4[4] together and thus complete the reporting requirement in a single filing. Doc. 14-2, ¶ 13. If multiple expenditures are made over a period of time, the committee need only file a Form C-4 for each additional expenditure. *Id.*, ¶ 13; Mont. Code Ann. § 13-37-226.

---

[3] *See* http://politicalpractices.mt.gov/content/pdf/5cfp/fillc-2complete.pdf
[4] *See* http://politicalpractices.mt.gov/content/5campaignfinance/fillcompleteC4.pdf

A Form C-2, called a Statement of Organization, is only two pages and "requires the listing of the treasurer/contact for the group, a brief description of the committee type and purpose, a list of the names of candidates identified by expenditure and the name and address of the bank used by the political committee." Doc. 14-2, ¶ 7. A Form C-2 takes about ten minutes to complete. *Id.* A Form C-4 is only three pages, and requires only basic information about the committee and the expenditure. *MCD* at 43. Both forms are available online. Doc. 14-2, ¶ 21. These forms are "less complicated than federal or state personal income tax forms." *MCD* at 43.

On the other hand, a group organized to receive contributions and independently make expenditures to support or oppose a candidate or ballot issue qualifies as an "independent committee." Mont. Code Ann. § 13-1-101(23). An independent committee is subject to more detailed disclosure and reporting requirements than an incidental committee. Mont. Code Ann. § 13-37-229. Under Montana's reporting requirements, then, the required disclosure increases as a political committee more actively engages in campaign spending and as an

election nears.  Doc. 14-2; Mont. Code Ann. §§ 13-1-101(15), (22), (23), 13-37-229, 13-37-232.

## ARGUMENT

A party is entitled to summary judgment if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it could "affect the outcome" of a lawsuit, and an issue is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  Factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.*

**I.     As this Court has already determined, Montana's regulation of "electioneering communication" meets exacting scrutiny.**

A.     Plaintiff misstates the legal framework.

Plaintiff challenges Mont. Code Ann. § 13-1-101(15) for being "overbroad" because it may include "issue advocacy."  Doc. 1 at 14-15;

Doc. 28 at 11-12.[5] Plaintiff, like the plaintiff in *Brumsickle*, claims that non-express political speech constitutes issue advocacy "for which virtually any content-based regulation is unconstitutional." Doc. 28 at 14; *Human Life of Washington v. Brumsickle*, 624 F.3d 990, 1015 (9th Cir. 2010) (characterizing plaintiff's position as: issue advocacy is "constitutionally sacrosanct" and "may not be regulated."). Plaintiff is wrong, as this Court determined in *MCD*.

In support of this rigid position, Plaintiff cites to *Buckley v. Valeo*, 424 U.S. 1 (1976) and *FEC v. Wisconsin Right to Life*, 551 U.S. 449 (2007). Doc. 28 at 12. But even if Plaintiff's "proposed communications constitute unadulterated issue advocacy," a doubtful position as expressed below, "its argument has been foreclosed by the Supreme Court's opinion in *Citizens United*." *Brumsickle*, 624 F.3d at 1016. There the Supreme Court rejected a bright-line rule distinguishing express and issue advocacy. *Id.* (citing *Citizens United v. FEC*, 558 U.S. 310, 369 (2010) ("we reject Citizens United's contention that the disclosure requirements must be limited to speech that is the functional equivalent of express advocacy.")); *see also MCD* at 48, noting "the

---

[5] Page cite for all ECF documents is to the page number in the document, not the ECF page number.

Ninth Circuit has rejected any bright-line 'major purpose test.'" (citing *Yamada v. Snipes*, 786 F.3d 1182, 1200-01 (9th Cir. 2015)).

More recently the Supreme Court summarily affirmed the decision of a three-judge panel upholding the federal electioneering communication provision[6] as applied to "issue advocacy." *Independence Institute v. FEC*, 2016 U.S. Dist. LEXIS 152623 (D.D.C., Nov. 3, 2016), *summarily aff'd* 2017 U.S. LEXIS 1506 (2017). The Panel, relying on *Citizens United*, held that issue advocacy "in the run up to an election" was not immunized by the First Amendment where the advocacy contained "an explicit reference to an electoral candidate." *Id.* at *22-25. The Panel determined that the Supreme Court had "closed the door to the . . . argument that the constitutionality of a disclosure provision turns on the content of the advocacy." *Id.* at 24. The Supreme Court, as noted, summarily agreed.

Plaintiff also cites to *Wisconsin Right to Life v. Barland*, 751 F.3d 804 (7th Cir. 2014) in support of its position that issue advocacy is "constitutionally sacrosanct." Doc. 28 at 15-16. *Barland*, though, is

---

[6] The federal definition of electioneering communication is very similar to Montana's definition. *See id.* at *4-5 (citing 52 U.S.C. § 30104(f)(3)).

distinguishable, has not been followed by the Ninth Circuit,[7] and in any case ends up applying exacting scrutiny. Even if *Barland* could be read to support Plaintiff's position regarding issue advocacy, it would be in conflict with *Brumsickle, Yamada, Citizens United* and *Independence Institute*.

In *Barland*, the challenged Wisconsin regulation counted "all political speech about issues" [occurring within the 60-day preelection period] *as express advocacy*--thus triggering full political-committee status and other restrictions . . . ." *Id.* at 837 (emphasis added). The Wisconsin regulation didn't just require reporting for groups engaged in issue advocacy during the preelection period, it treated those groups the same as express advocacy groups, requiring "full-blown PAC duties." *Id.* at 841.[8]

Here, in contrast, "electioneering communication" explicitly does not include express advocacy, and is not treated as express advocacy. Mont. Code. Ann. § 13-1-101(15)(a). Instead, Montana imposes

---

[7] *See Yamada*, 786 F.3d at 1196 n.7 (refusing to adhere to *Barland's* conclusion regarding the "heavy administrative burdens" of Wisconsin's "PAC-like disclosure program").

[8] The regulation was also likely ultra vires, as the implemented statute was limited to express advocacy. *Id.* at 835.

sliding-scale requirements for an electioneering communication, generally registration as an incidental committee with minimal reporting requirements. Mont. Code Ann. §§ 13-37-226, -232; Doc. 14-2; *MCD* at 51 ("the burdens associated with incidental committee reporting are minimal"); Doc. 18 at 29 n.9 (distinguishing Montana's tailored reporting requirements from those in *Barland*).

    B.    Plaintiff misrepresents the facts.

Plaintiff's argument also relies on several misrepresentations. It attacks Montana's disclosure requirements as if all groups must meet full "independent committee" reporting and disclosure requirements. Doc. 28 at 13-14. This ignores the reality that Montana's reporting requirements only increase if political activity increases.

Plaintiff also incorrectly states that Montana regulates "electioneering communication" for a 105 day period before an election, based on the requirement that ballots be sent to overseas electors 45 days before an election. Doc. 28 at 13 n.1 (citing Mont. Code Ann. § 13-13-205(2)). As explained above, the covered period in Montana is actually only 85 days (or so) before an election based on when general, not overseas, ballots are mailed by the Secretary of State. Doc. 33;

Mont. Admin. R. 44.11.605(2); COPP-2016-AO-005 at 3 (defining "the initiation of voting" based on the calendared mailing date of general absentee ballots, not overseas ballots). This makes sense because it is unlikely Montanans overseas will be exposed to electioneering communication. Doc. 33. Either way it is indisputable that the provision only includes communication within 60 days of the beginning of voting.

Plaintiff's claim to primarily engage in issue advocacy is likewise suspect. Plaintiff asserts that its future communications will be substantially the same as its 2012 mailer. Doc. 28 at 6. The 2012 mailer was sent during the closely fought 2012 primary election between Tutvedt and Roberts. Ex. 2 to Doc. 1 at 4-5; Doc. 1 at 1. It suggests Tutvedt single-handedly killed a "smokeless powder plant" in Flathead County, thus costing jobs. *Id.* Given the "detailed language" criticizing Tutvedt, and the "unique timing" prior to the primary, it is reasonable to interpret the communication as a call to vote against Tutvedt. *Brumsickle*, 624 F.3d at 1015; *Yamada*, 786 F.3d at 1203.

C. Montana's provision meets exacting scrutiny.

Even assuming Plaintiff is correct that its proposed mailer qualifies as issue advocacy, Montana's electioneering communication regulation meets exacting scrutiny. *MCD* at 40-47. A law meets exacting scrutiny if it is "substantially related to a sufficiently important governmental interest." *Brumsickle*, 624 F.3d at 1005.

The important interest fulfilled by disclosure requirements, such as increasing transparency, informing Montanans about who is behind the messages vying for their attention, and decreasing circumvention, is uncontested. *Citizens United*, 558 U.S. at 369; *Brumsickle*, 624 F.3d at 1005, 1008, 1011-12; *Alaska Right to Life v. Miles*, 441 F.3d 773, 793 (9th Cir. 2006) ("compelling state interest in informing voters who or what entity is trying to persuade them to vote in a certain way."). This particular disclosure law serves an important, if not compelling interest, since "[d]ue to the dramatic rise in election spending in the last few decades, Montana's voters are inundated with political television advertisements and mailers." *MCD* at 41-42.

Likewise Montana's electioneering communication regulation is substantially related to this important disclosure interest. The

disclosure requirement is only effective for communications made 60 days before voting begins. Mont. Code Ann. § 13-1-101(15)(a); *MCD* at 46-47 (citing *Yamada*, 786 F. 3d at 1203 n.14). And the disclosure requirements are "narrowly tailored such that the required disclosure increases as a political committee more actively engages in campaign spending and as an election nears." *Brumsickle*, 624 F.3d at 1013; *MCD* at 47; Doc. 14-2; Doc. 18 at 20 n.9 (Montana's requirements "tailor the amount of reporting to the degree of political activity.").

If Plaintiff's political involvement is as limited as it claims, it would only have to register as an "incidental committee," Mont. Code Ann. § 13-1-101(22), which this Court has twice determined imposes only a minimal burden, sometimes as little as one report. *MCD* at 51; *NAGR v. Murry*, 969 F. Supp. 2d 1262, 1270 (D. Mont. Sept. 17, 2013). Because the electioneering communication regulation meets exacting scrutiny, "the Court need not address [NAGR's] overbreadth argument." *MCD* at 48.

## II. Defendants do not contest Plaintiff's challenge to Mont. Code Ann. § 13-35-225(3).

As noted in Defendants' preliminary pretrial statement, Doc. 20 at 2-3, Defendants do not plan to further defend against the challenge to Mont. Code Ann. § 13-35-225(3) (Plaintiff's third claim for relief). It is unclear why Plaintiff briefed this claim, and Defendants do not agree to all of Plaintiff's arguments. In particular, Defendants disagree as to Plaintiff's characterization of the relevant interests. Doc. 28 at 17. Still, Defendants do not contest this claim based on the Court's determination that the statute is likely unconstitutional, Doc. 18 at 25, and do not oppose summary judgment on this claim.

## III. Plaintiff's first claim for relief, relating to the 2012 Mailer, is moot.

The claim relating to the 2012 Mailer is moot, because the statute of limitations for prosecuting any claim regarding a 2012 mailing has run. Doc. 18 at 11 (noting the parties' concession that the statute of limitations ran, at the latest, on June 5, 2016). This claim should be dismissed.

### IV. Summary judgment may be granted without oral argument.

Because this Court has already upheld the "electioneering communication" definition and requirements in *MCD*, and Plaintiff neither distinguishes its case from *MCD* nor requests oral argument, this Court should grant summary judgment for Defendants on the briefs.

### CONCLUSION

Plaintiff's motion should be denied, except as to Mont. Code Ann. § 13-35-225(3), and Defendants' motion for summary judgment should be granted.

Respectfully submitted this 8th day of March, 2017.

> TIMOTHY C. FOX
> Montana Attorney General
> 215 North Sanders
> P.O. Box 201401
> Helena, MT 59620-1401
>
> By: /s/ *J. Stuart Segrest*
>     J. STUART SEGREST
>     Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the clerk of the court for the United States District Court for the District of Montana, Helena Division, by using the cm/ecf system. Participants in the case who are registered cm/ecf users will be served by the cm/ecf system.

DATED:  March 8, 2017                  /s/ J. Stuart Segrest
                                       J. STUART SEGREST
                                       Assistant Attorney General


## CERTIFICATE OF COMPLIANCE

I certify that pursuant to L.R. 7.1(d)(2)(E), this brief contains 2,320 words, excluding the caption and certificates of service and compliance, as calculated by Microsoft Word.

                                       /s/ J. Stuart Segrest
                                       J. STUART SEGREST
                                       Assistant Attorney General