TIMOTHY C. FOX
Montana Attorney General
J. STUART SEGREST
MATTHEW T. COCHENOUR
Assistant Attorneys General
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
ssegrest@mt.gov; mcochenour2@mt.gov
Phone: (406) 444-2026, Fax: (406) 444-3549

COUNSEL FOR DEFENDANTS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA

| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> JONATHAN MOTL, in his official capacity as the Commissioner of Political Practices for the State of Montana, *et al.*, <br><br> Defendants. | Case No. CV 16-00023-H-DLC <br><br> **DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT** |
|---|---|

# INTRODUCTION

Defendants, in their opening brief, Doc. 35, explained how Ninth Circuit and Supreme Court precedent, as well as this Court's prior decisions, dictate that Montana's regulation of "electioneering

communication" is constitutional.  Instead of addressing these daunting precedents, Plaintiff (NAGR) doubles down on its position that "issue advocacy" may not be regulated.  Doc. 38.

This Court already rejected this argument when denying NAGR's motion for a preliminary injunction.  Doc. 18 at 17.[1]  The Ninth Circuit, based on Supreme Court precedent, has held that "as long as the disclosure requirements satisfy" exacting scrutiny, "they are permissible under the First Amendment." *Id*.  *Barland*, for what it's worth, does not hold otherwise.  *Wisconsin Right to Life v. Barland*, 751 F.3d 804, 840 (7th Cir. 2014) (applying exacting scrutiny).  Here, as this Court has now twice determined, the disclosure requirements for "electioneering communication" satisfy exacting scrutiny, and therefore Defendants are entitled to summary judgment.  Doc. 18 at 20; *Montanans for Community Dev. v. Motl*, CV 14-55-H-DLC, Doc. 176 at 44; 2016 U.S. Dist. LEXIS 150633 (D. Mont. Oct. 31, 2016) (*MCD*).

---

[1] Page cite for all ECF documents is to the page number in the document, not the ECF page number.

# ARGUMENT

## I. Montana's disclosure requirements for electioneering communications are constitutional.

### A. *Brumsickle* and *Citizens United* control.

Like a broken record, NAGR continues to assert that a group "engaged in issue advocacy . . . is not subject to" disclosure requirements. Doc. 38 at 2. In advocating this position, NAGR "does no more than reiterate arguments that have been rejected by the Supreme Court." *Human Life of Washington v. Brumsickle*, 624 F.3d 990, 1016 (9th Cir. 2010).

As the Supreme Court, the Ninth Circuit, and this Court have held, disclosure requirements are not constitutionally "limited to speech that is the functional equivalent of express advocacy." Doc. 18 at 17 (citing *Citizens United v. FEC*, 558 U.S. 310, 369 (2010); *Brumsickle*, 624 F.3d at 1016). It is therefore irrelevant whether NAGR's proposed communication constitutes "issue advocacy," though both Defendants and this Court are "skeptical" that it does. Doc. 18 at 17; Doc. 35 at 11.[2] This is because issue advocacy may be regulated if exacting

---

[2] NAGR criticizes Defendants' discussion of the mailer's "unique timing" and "detailed language," Doc. 38 at 4-5, but these are factors considered important by the Ninth Circuit. *Brumsickle*, 624 F.3d at 1015; *see also Yamada*, 786 F.3d at 1203.

scrutiny is met. This point is so clear that the Supreme Court recently summarily affirmed the decision in *Independence Institute v. FEC*, which held that the Supreme Court had "closed the door to the . . . argument that the constitutionality of a disclosure provision turns on the content of the advocacy." *Independence Institute v. FEC*, 2016 U.S. Dist. LEXIS 152623 at *24 (D.D.C., Nov. 3, 2016), *summarily aff'd* 2017 U.S. LEXIS 1506 (2017).

NAGR seems to question the applicability of *Brumsickle* and *Citizen's United* to Montana's regulation.[3] Doc. 38 at 8-9. *Brumsickle* directly, and broadly, addressed whether "unadulterated issue advocacy" may be regulated. *Id.*, 624 F.3d at 1016. And though the Court noted that "there is less danger of a regulation sweeping too broadly in the context of a ballot measure than in a candidate election," this was while applying exacting scrutiny and "analyzing the relationship between the particular burdens imposed by the Disclosure law and the government interests it furthers[.]" *Id.* at 1018. Additionally, it is equally true in candidate elections that "as trends in campaign finance jurisprudence have opened the door to even more

---

[3] NAGR makes this point indirectly by comparing *Brumsickle* and *Citizens United* to *Barland*. Ironically, NAGR fails to discuss the glaring differences between *Barland* and Montana's regulation, as discussed below.

political expenditures in the future, the magnitude of the state's interest is only likely to increase." *Id.* at 1007-08.

*Citizens United*, likewise, applies to Montana's regulation. The opinion directly considered disclosure requirements for "electioneering communication." *Citizens United*, 558 U.S. at 368. The federal definition of electioneering communication is quite similar to Montana's, including applying where a candidate is explicitly referenced in the communication. *Id.*, *see also* 52 U.S.C. § 30104(f)(3). While the federal definition applies where there is $10,000 in expenditures on "broadcast, cable, or satellite communications," *id.*, Montana's lower threshold amount and broader range of covered communications are reasonable considering Montana's small population and geographically vast landscape.[4]

NAGR also continues to insist that *Barland* controls and dictates that Montana's disclosure requirements are unconstitutional, Doc. 38 at 7-10, despite this Court's admonition that "it is not persuaded by NAGR's citation to" *Barland*. Doc. 18 at 20 n.9. *Barland*, apart from

---

[4] Citizens United actually criticized the federal definition as underinclusive for not including "print or Internet advertising." *Citizens United*, 558 U.S. at 368.

not being controlling, is distinguishable because the Wisconsin requirements at issue "indiscriminately" imposed "full-blown PAC duties" and "complicated and detailed reporting requirements." *Id.* (citing *Barland*, 751 F.3d at 839-41.).

Here, in contrast, it is undisputed that under "Montana's reporting requirements, the required disclosure increases as a political committee more actively engages in campaign spending and as an election nears." Doc. 39, ¶ 12. And the burden imposed by Montana's incidental disclosure requirements is minimal. Doc. 18 at 19-20 (citing *NAGR I*, 969 F. Supp. 2d 1262, 1270 (D. Mont. 2013)); *MCD* at 51; Docs. 14-2 and 40 (Motl declarations).

In any case, *Barland* does not hold that issue advocacy is constitutionally exempt from disclosure requirements, but instead applies exacting scrutiny. 751 F.3d at 840. Exacting scrutiny requires that a disclosure regulation be "substantially related to a sufficiently important governmental interest." *Brumsickle*, 624 F.3d at 1005 (citing *Doe v. Reed*, 130 S. Ct. 2811, 2818 (2010)); *see also Barland*, 751 F.3d at 840.

The exacting scrutiny test set out in *Reed* is still binding law. *McCutcheon v. FEC*, 134 S. Ct. 1434 (2014), an aggregate contribution limits case, did not change the "series of precedents" applying exacting scrutiny to "challenges to disclosure requirements in the electoral context." *Reed*, 130 S. Ct. at 2818. As described in Defendants' opening brief, and this Court's prior opinions, exacting scrutiny is met here because there is a substantial relationship between Montana's interest in informing the electorate concerning the source of communications and the disclosure requirements. Doc. 35 at 12-13; Doc. 18 at 19-20; *MCD* at 40-47.

### B. The burden of complying with Montana's regulation is minimal.

NAGR argues that "Defendants ignore many of the actual burdens imposed upon" incidental committees. Doc. 38 at 10-11. But their list of "burdens" is really just a recitation of the requirements that this Court has already considered numerous times, broken up in an attempt to exaggerate the burden. It is also incorrect in part.

NAGR's first allegation is that it is "impossible for organizations like NAGR to segregate" contributions made in response to a

solicitation for an electioneering communication. *Id.* at 10.[5] NAGR is wrong. As Commissioner Motl explains in his declaration, this "simple requirement regarding earmarked contributions is well understood and has been properly reported by Montana incidental committees . . . ." Doc. 40. NAGR's own experience undercuts its claim, as the NAGR PAC already segregates contributions for federal purposes. *See* Ex. 1.[6]

NAGR then lists the few disclosures required, or potentially required, of an incidental committee. Doc. 38 at 10-11. These disclosures are all covered by Form C-2, which takes about 10 minutes to complete. Doc. 40. Most incidental committees open and close within the same reporting period, and thus require only a single filing (a Form C-2 and C-4 together, a total of five pages). *Id.* If the organization makes multiple expenditures over more than one reporting period, it need only file an additional Form C-4 for the additional expenditure. *Id.* Furthermore, a "corporation, such as NAGR, need not appoint a new treasurer or establish a separate bank account, but may simply list its

---

[5] The Warrington Declaration upon which this statement is based (Doc. 15-1, not Doc. 26-1 as cited), is of questionable reliability due to Warrington's current role as a lawyer for NAGR. *See* Mont. R. Prof. Conduct 3.7. It also provides no specifics as to why NAGR is unable to perform this simple record-keeping function.

[6] Available at http://www.fec.gov/fecviewer/CandidateCommitteeDetail.do

existing treasurer and the bank it already uses." *Id*. In short, NAGR fails to show that the disclosure required of an incidental committee imposes more than a minimal burden, as previously held by this Court. Doc. 18 at 19-20 (citing *NAGR I*, 969 F. Supp. 2d 1262, 1270 (D. Mont. 2013)); *MCD* at 51.

### C. The covered period is 60 days prior to the initiation of voting.

In another attempt to exaggerate the potential burden of Montana's electioneering communication disclosure, NAGR ignores the Commissioner's interpretation of the "initiation of voting in an election" under Mont. Code Ann. § 13-1-101(15). Doc. 38 at 6-7. This back and forth ultimately is immaterial, because it is undisputed that Montana's definition applies only "within 60 days of the initiation of voting in an election," and thus falls squarely within the time period of the federal definition upheld in *Citizens United*.

In any case NAGR is mistaken. As the Commissioner has explained in detail, the covered period in Montana is around 85 days before an election depending on when general ballots are mailed by the Secretary of State. Docs. 33, 40; Mont. Admin. R. 44.11.605(2); Mont. Code Ann. § 13-13-205(1)(a). This is not a "subjective re-

interpretation," Doc. 38 at 6, but the formal agency adoption of the covered period through administrative rule and Commissioner Decisions. Docs. 33-1, 33-2, 40. While Montana's preliminary briefing in this matter referred to a 90-day window, that was based on the Commissioner's understanding of the outside range of when the mailing of general absentee ballots may occur. Doc. 40.

    The Commissioner's 85-day determination is reasonable. It also comports with the principle of "constitutional avoidance." *Rodriguez v. Robbins*, 804 F.3d 1060, 1083 (9th Cir. 2015)[7] (citing *Clark v. Martinez*, 543 U.S. 371, 380 (2005)). A proper limiting construction here would read "initiation of voting in an election" to refer to the mailing of general absentee ballots, not overseas ballots. *See id.* at 1082-83 (reading immigration detention statute to require bond hearing at six months); *Clark*, 543 at 380-81 (if one construction "would raise a multitude of constitutional problems, the other should prevail").

---

[7] Certiorari granted and supplemental briefing requested regarding constitutional questions. Supreme Court Case No. 15-1204.

## II. A hearing is unnecessary.

NAGR does not address Montana's position that this Court may grant summary judgment without oral argument. Doc. 35 at 15. This Court should do so based on its prior decisions regarding Montana's electioneering communication disclosure requirements, and the Supreme Court's and Ninth Circuit's rejection of NAGR's arguments.

## CONCLUSION

Defendants' motion for summary judgment should be granted.

Respectfully submitted this 5th day of April, 2017.

        TIMOTHY C. FOX
        Montana Attorney General
        215 North Sanders
        P.O. Box 201401
        Helena, MT 59620-1401

        By: */s/ J. Stuart Segrest*
            J. STUART SEGREST
            Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the clerk of the court for the United States District Court for the District of Montana, Helena Division, by using the cm/ecf system. Participants in the case who are registered cm/ecf users will be served by the cm/ecf system.

DATED:  April 5, 2017                   /s/  *J. Stuart Segrest*
                                                                     J. STUART SEGREST
                                                                     Assistant Attorney General

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to L.R. 7.1(d)(2)(E), this brief contains 1819 words, excluding the caption and certificates of service and compliance, as calculated by Microsoft Word.

                                                                     /s/  *J. Stuart Segrest*
                                                                     J. STUART SEGREST
                                                                     Assistant Attorney General