IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION



FILED

SEP 0 6 2017

Clerk, U S District Court
District Of Montana
Missoula

| | |
|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>JONATHAN MOTL, in his official capacity as the Commissioner of Political Practices for the State of Montana; TIMOTHY C. FOX, in his official capacity as Attorney General for the State of Montana; LEO GALLAGHER, in his official capacity as County Attorney for the County of Lewis & Clark,<br><br>Defendants. | CV 16–23–H–DLC<br><br>(Consolidated with CV 16–33–H–DLC)<br><br>ORDER |

Before the Court are cross-motions for summary judgment. Plaintiff National Association for Gun Rights, Inc. ("NAGR") argues that Montana's campaign finance disclosure requirements are unconstitutional. Specifically, NAGR contends that Montana impermissibly regulates "issue advocacy" by imposing reporting requirements for "electioneering communications." *See* Mont. Code Ann. § 13–1–101(15) (2015) (defining (electioneering communications"). NAGR also contends that Montana's vote disclosure statute, Montana Code

-1-

Annotated ("MCA") § 13-35-225(3), is likewise unconstitutional. In response, Defendants Jonathan Motl,[1] Timothy C. Fox, and Leo Gallagher, in their official capacities (collectively "Defendants"), move for summary judgment arguing that Montana's regulation of electioneering communications satisfies constitutional scrutiny. For the reasons discussed below, the Court will grant Defendants' motion as it pertains to MCA 13-1-101(15). However, because Defendants do not contest Plaintiffs' challenge to MCA § 13-35-225(3), the Court will grant NAGR's motion in part and award summary judgment as to this claim only.

## I. Background

### A. National Association for Gun Rights, Inc.

NAGR is a tax-exempt organization under Internal Revenue Code § 501(c)(4). *See NAGR v. Murray*, 969 F. Supp. 2d 1262, 1264–1265 (D. Mont. Sept. 17, 2013) ("*NAGR I*"). NAGR asserts that they are "a grassroots organization whose mission is to defend the right to keep and bear arms, and advance that God-given Constitutional right by educating the public and urging them to take action in the public policy process." (Doc. 37 at 3 (internal quotation marks omitted).) In 2012, NAGR sent several mailers ("2012 Mailer") to the

---

[1] The Court notes that Jonathan Motl is no longer Montana's Commissioner of Political Practices. In May 2017, Jeff Mangan became the new Commissioner of Political Practices. https://politicalpractices.mt.gov/aboutus

residents in Flathead County, Montana, which discussed state Senator Bruce Tutvedt's alleged attempts to "kill" Senate Bill 371. This bill, which ultimately failed in the 2011 Montana legislative session, was entitled "[a]n act ensuring the availability of Montana ammunition; encouraging the formation of business in Montana primarily engaged in the manufacture of ammunition components." (Doc. 1 at 20.)

The 2012 Mailer stated that "**FACT**: Flathead County was poised to get a new smokeless powder plant until Bruce Tutvedt took to the Senate Floor and demanded it be killed. (S.B. 371, 4/13/11 Audio) Now, thanks to Bruce Tutvedt, unemployment in the Flathead is nearly 11% percent." (Doc. 1 at 20 (emphasis in original).) The mailer further urged the recipient to "[c]ontact Bruce Tutvedt right away and **DEMAND** he apologize for killing new manufacturing in Flathead County." (*Id.* (emphasis in original).)

As a result of this mailer, NAGR received a letter from Montana's Commissioner of Political Practices ("COPP") Jonathan Motl which found that NAGR, along with six other corporate entities, "failed to meet Montana campaign practice law and standards by failing to register, report and disclose . . . illegal corporate contributions for or against a . . . primary election candidate." (*Id.* at 33.) The letter also stated that there was sufficient evidence to show that NAGR

"violated Montana's campaign practices laws as set out above and that civil adjudication of the violation is warranted." (*Id.* at 50.)

### B. Present Litigation

In March of 2016, NAGR filed suit seeking three forms of relief. First, NAGR sought to enjoin Montana's COPP from pursuing civil penalties against the organization based on the 2012 Mailer. Second, as mentioned above, NAGR asserts that MCA § 13–1–101(15), which defines "electioneering communications," a form of speech which triggers Montana's campaign finance disclosure requirements, is unconstitutionally overbroad and must be struck down. This statute states that:

> (a) "electioneering communication" means a paid communication that is publicly distributed by radio, television, cable, satellite, internet website, newspaper, periodical, billboard, mail, or any other distribution of printed materials, that is made within 60 days of the initiation of voting in an election, that does not support or oppose a candidate or ballot issue, that can be received by more than 100 recipients in the district voting on the candidate or ballot issue, and that:
>     (i) refers to one or more clearly identified candidates in that election;
>     (ii) depicts the name, image, likeness, or voice of one or more clearly identified candidates in that election; or
>     (iii) refers to a political party, ballot issue, or other question submitted to the voters in that election.
> (b) The term does not mean:
>     (i) a bona fide news story, commentary, blog, or editorial distributed through the facilities of any broadcasting station, newspaper, magazine, internet website, or other periodical publication of general circulation unless the facilities are owned or controlled by a candidate

>or political committee;
>(ii) a communication by any membership organization or corporation to its members, stockholders, or employees;
>(iii) a commercial communication that depicts a candidate's name, image, likeness, or voice only in the candidate's capacity as owner, operator, or employee of a business that existed prior to the candidacy;
>(iv) a communication that constitutes a candidate debate or forum or that solely promotes a candidate debate or forum and is made by or on behalf of the person sponsoring the debate or forum; or
>(v) a communication that the commissioner determines by rule is not an electioneering communication.

Mont. Code Ann. § 13-1-101(15).

Finally, in its third claim for relief, NAGR asserts that MCA § 13–35–225(3), Montana's so-called "vote disclosure" provision, unconstitutionally compels speech. This provision requires that:

>Printed election material described in subsection (1) that includes information about another candidate's voting record must include the following:
>(i) a reference to the particular vote or votes upon which the information is based;
>(ii) a disclosure of all votes made by the candidate on the same legislative bill or enactment; and
>(iii) a statement, signed as provided in subsection (3)(b), that to the best of the signer's knowledge, the statements made about the other candidate's voting record are accurate and true.

Mont. Code Ann. § 13–35–225(3)(a). Following the filing of its Complaint, NAGR moved for preliminary relief requesting that this Court: (1) enjoin the COPP from penalizing NAGR for its 2012 Mailers; and (2) enjoin the State of

-5-

Montana from enforcing MCA §§ 13–1–101(15) and 13–35–225(3).

Shortly after NAGR filed its Complaint, Plaintiff J.C. Kantorowicz ("Kantorowicz"), who was at the time a candidate for the Republican nomination for Montana Senate District No. 10, also filed suit challenging the constitutionality of MCA § 13–35–225(3). *See Kantorowicz v. Motl, et al.*, Cause No. CV 16-33-H-DLC-JTJ. In April of 2016, a complaint was filed with the COPP by Kantorowicz's opponent for the Republican nomination. This complaint states that Kantorowicz allegedly violated Montana's vote disclosure requirements when he mailed a letter in January 2016 which discussed his opponent's voting record but failed to comply with the statute's disclosure requirements. Kantorowicz, like NAGR, filed suit in this Court arguing that MCA § 13–35–225(3) is unconstitutional, and moved for preliminary relief. Due to the similar nature of NAGR and Kantorowicz's arguments concerning MCA § 13–35–225(3), the Court consolidated their claims for the sake of judicial efficiency. (Doc. 17.)

After hearing arguments on the motions for summary judgment, the Court preliminarily enjoined the enforcement of MCA § 13–35–225(3), i.e., the vote disclosure provision. (Doc. 18.) The Court determined that consolidated

Plaintiffs had satisfied their initial burden that all four *Winter*[2] factors weighed in favor of a preliminary injunction. In particular, the Court noted that Plaintiffs were likely to succeed on the merits of their claim that MCA § 13-35-225(3) was unconstitutional. In making this finding, the Court found that MCA § 13-35-225(3) would likely fail to survive strict scrutiny because it was not narrowly tailored to Montana's stated interest in providing accurate information to the voters.

However, the Court denied NAGR's motion as it pertained to the alleged unconstitutionality of MCA § 13-1-101(15), which defines "electioneering communications." The Court denied the motion because NAGR had failed to show that the organization was likely to succeed on their claim that MCA § 13-1-101(15) was unconstitutional. The Court also denied NAGR's request to enjoin the COPP from prosecuting the organization for its 2012 Mailer. In denying NAGR's request, the Court found that this claim was likely moot because the statute of limitations for prosecuting any claim regarding the 2012 Mailer was about to run. Further, the COPP signaled through a declaration that it was likely

---

[2] *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").

going to forgo litigation against NAGR. Thus, because this claim was about to become moot, the Court refrained from issuing an advisory opinion and denied without prejudice NAGR's request to enjoin any forthcoming prosecution. Following the Court's Order on Plaintiffs' motions for preliminary injunction, the parties began briefing their cross-motions for summary judgment. These motions are now ripe for decision.

## II. Applicable Law

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248.

## III. Analysis

As mentioned above, NAGR's Complaint requests three claims for relief: (1) enjoin the COPP from pursuing civil penalties against the organization as a result of the 2012 Mailer (Claim 1); (2) declare MCA § 13–1–101(15) (Claim 2) and MCA § 13–35–225(3)(a) (Claim 3) as unconstitutional. Additionally, consolidated Plaintiff Kantorowicz's Complaint raises one claim, i.e., the challenge to Montana's vote disclosure law. Although it appears that Plaintiffs' claims regarding the prosecution of NAGR for its 2012 mailers and its challenge to the vote disclosure statute are now either moot or no longer contested by Defendants, in the interest of thoroughness, the Court will briefly address all three claims in order.

### A. Prosecution of the 2012 Mailer (Claim 1)

As discussed, the Court denied NAGR's request to preliminarily enjoin the COPP from prosecuting the organization because the claim would soon become moot. Indeed, the parties have conceded that the statute of limitations for prosecuting any claim surrounding the 2012 Mailer ran, at the latest, on June 5, 2016. (Doc. 18 at 11.) Consequently, because this date has come and gone, and no prosecution was pursued against NAGR, the Court will dismiss Claim 1 of NAGR's complaint as moot.

## B. Electioneering Communication - Claim 2

Next, Claim 2 of NAGR's complaint alleges that MCA § 13–1–101(15), which defines "electioneering communication," is unconstitutionally overbroad.[3] NAGR contends that its mission of "educating the public" through its mailers which, the organization affirms, will contain "the positions and voting records of public officials and candidates regarding the Second Amendment," is purely "issue advocacy." (Docs. 28 at 2; 28-1 at 2.) Although NAGR stresses that "it will not advocate for or against a candidate for office" (Doc. 28 at 2), the mere fact that its mailers contain the name of political candidates or political parties could require the organization to comply with Montana's political committee reporting requirements.

Indeed, under Montana law, NAGR's mailers would qualify as an "electioneering communication" if they: (1) are "publicly distributed by radio,

---

[3] Although the parties do not raise the issue of NAGR's standing to challenge this statute, the Court briefly notes that NAGR has satisfied constitutional standing requirements. NAGR has submitted a declaration from Dudley Brown, President of NAGR, that states the organization intends to send out mailers similar to its 2012 Mailer "to Montanans during the 2018 election cycle and will spend more than $250.00 (primarily printing and mailing) to inform Montanans of the positions and voting records of public officials and candidates regarding the Second Amendment." (Doc. 28-1 at 2.) However, NAGR asserts that it will not send these mailers in 2018 if it is required to comply with Montana's disclosure requirements for political committees. For the reasons discussed in the Court's Order on Plaintiffs' motion for preliminary injunction, the Court finds NAGR's second claim raises a constitutional injury-in-fact. (*See* Doc. 18 at 12–16.)

-10-

television, cable, satellite, internet website, newspaper, periodical, billboard, mail, or any other distribution of printed materials"; (2) distributed "within 60 days of the initiation of voting in an election"; (3) do "not support or oppose a candidate or ballot issue"; (4) "can be received by more than 100 recipients in the district voting on the candidate or ballot issue"; and (5) either "(i) refers to one or more clearly identified candidates in that election; (ii) depicts the name, image, likeness, or voice of one or more clearly identified candidates in that election; or (iii) refers to a political party, ballot issue, or other question submitted to the voters in that election." Mont. Code Ann. § 13–1–101(15)(a).

Further, if NAGR spends at least $250.00 on these mailers, it has made an "expenditure" under MCA 13–1–101(17)(a)(ii), and must register as a "political committee." Mont. Code Ann. § 13–1–101(30)(b), (d). Because sending its mailers would require NAGR to register as political committee, which would trigger specific disclosure requirements, NAGR contends that Montana's definition of "electioneering communication" is unconstitutionally overbroad because it regulates issue advocacy, as opposed to express political advocacy.

Specifically, NAGR argues that the imposition of political committee disclosure requirements is an impermissible burden on the First Amendment rights

of groups who engage in issue advocacy.[4] Instead, NAGR contends, disclosure requirements are only appropriate for groups that engage in express advocacy. The United States Supreme Court has found that political speech constitutes express advocacy or its functional equivalent "if the ad is susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate." *Fed. Election Commn. v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 469–470 (2007). Because NAGR's proposed mailers do not "appeal to vote for or against a specific candidate," and, instead, merely educate the public about a candidate's voting record or positions concerning Second Amendment issues, NAGR contends that it does not engage in express advocacy and cannot be burdened with political committee disclosure requirements. The Court disagrees.

As recognized in the Court's Order denying in part NAGR's motion for preliminary injunction, the United States Court of Appeals for the Ninth Circuit, citing the Unites States Supreme Court's decision in *Citizens United v. FEC*, has declined to recognize "a bright-line rule distinguishing express and issue

---

[4] NAGR cites to *Wisconsin Right To Life, Inc. v. Barland*, 751 F.3d 804 (7th Cir. 2014), in support of its argument. However, the Court is not persuaded by this authority and finds that the statute at issue in that case is distinguishable from the one at bar. For instance, unlike Montana's statute, which tailors the amount of disclosure to the committee's political activities, the disclosure provisions in *Barland* "indiscriminately" imposed "full-blown PAC duties" and required complicated and detailed reporting requirements. *Barland*, 751 F.3d at 839–841. In contrast, as discussed *infra*, Montana's disclosure requirements are relatively straightforward and impose minimal burdens on an organization.

advocacy," and "reject[s] [the] contention that . . . disclosure requirements must be limited to speech that is the functional equivalent of express advocacy." *Human Life of Washington Inc. v. Brumsickle*, 624 F.3d 990, 1016 (9th Cir. 2010) (quoting 558 U.S. 310, 369 (2010)). Rather, as previously discussed by this Court, Montana's definition of electioneering communication triggers disclosure requirements for political committees and thus must be viewed through the lens of exacting scrutiny, i.e., whether it is "substantially related to a sufficiently important governmental interest." *Brumsickle*, 624 F.3d at 1016.[5]

Here, taking this test in reverse, Defendants contend that MCA § 13-1-101(15), and other statutes which trigger disclosure requirements, fulfill an important government interest by "increasing transparency, informing Montanans about who is behind the messages vying for their attention, and decreasing circumvention." (Doc. 35 at 12.) Indeed, both the Ninth Circuit and the United States Supreme Court have recognized these interests to be important. *See Citizens United*, 558 U.S. at 369; *Brumsickle*, 624 F.3d at 1005, 1008, 1011–1012; *Alaska Right to Life v. Miles*, 441 F.3d 773, 793 (9th Cir. 2006). Likewise, this Court agrees that these are important, if not compelling, government interests.

---

[5] The Court notes that NAGR's opening brief in support of its motion concedes that exacting scrutiny is the appropriate test for determining the constitutionality of MCA § 13-1-101(15). (Doc. 28 at 12.)

Next, Defendants assert that Montana's disclosure requirements for political committees is substantially related to these interests. The Court agrees. As discussed in previous orders by this Court, Montana's disclosure laws satisfy constitutional scrutiny because they are tailored to the degree of an organization's political activity and the timing of its communications. *See Montanans for Community Dev. v. Motl*, 216 F. Supp. 3d 1128, 1152 (D. Mont. 2016); *see also Brumsickle*, 624 F.3d 990 at 1013 (finding that state disclosure laws satisfy constitutional scrutiny when the "required disclosure increases as a political committee more actively engages in campaign spending and as an election nears").

This Court has found that registering as an incidental committee imposes a minimal burden on an organization. *NAGR I*, 969 F. Supp. 2d at 1267. Indeed, a political committee registers by completing a Form C-2, "Statement of Organization," which can be completed in less than 10 minutes. ( Doc. 14-2 at 3–4.) This form, like all COPP forms, is available online. (*Id.* at 7–8.) To register, the organization need only disclose its "treasurer/contact . . ., a brief description of the committee type and purpose, a list of the names of candidates identified by expenditure and the name and address of the bank used by the political committee." (*Id.* at 3.)

An organization's committee classification is driven by its "reportable

-14-

election activity." (*Id.* at 4.) Here, because NAGR asserts that its proposed mailers will refer to candidates for office by name, but "will not advocate for or against a candidate for office" (Doc. 28 at 2), NAGR's mailers would likely require the organization to register as an incidental committee and complete a Form C-4. *See* Mont. Code Ann. § 13–1–101(22)(a) ("Incidental committee means a political committee that is not specifically organized or operating for the primary purpose of supporting or opposing candidates or ballot issues but that may incidentally become a political committee by receiving a contribution or making an expenditure."); (*see also* Doc. 14-2 at 4) (internal quotation marks omitted).

Completing Form C-4 requires disclosure of "receipts and expenditures, including some basic information -- name, address and date; occupation and employer for contributions; and the purpose, by brief description, of the expenditures." (*Id.* at 7.) An incidental committee that makes a single expenditure may open and close within the same reporting period, and may satisfy its reporting requirements through one combined C-2 and C-4 filling. (*Id.* at 5.) Further expenditures by an incidental committee require the completion of additional Form C-4 reports. (*Id.*) Depending on the complexity of the organization's contributions and expenditures, more disclosure by an organization may be required. For example, an incidental committee that solicits funds for a

specific purpose must report the names of any contributors who provide these "earmarked contributions." *See* Mont. Code Ann. § 13-37-232(1); *see also* Mont. Admin. R. 44.11.404 (defining "earmarked contribution").

Additionally, the Court notes that not all communications which mention the name of a political candidate trigger disclosure requirements. In addition to the numerous qualifiers which limit the reach of this statute,[6] including the requirement that more than $250.00 must be spent on the communication and that it must be "received by more than 100 recipients," the statute only imposes disclosure requirements on communications made "within 60 days of the initiation of voting in an election." Mont. Code Ann. § 13-1-101(15)(a). Though the parties dispute whether this limitation comes into play around 85 days before an election or 105 days due to Montana's absentee voter system, it is undisputed that this time period is limited to the months just before an election. Thus, under this sliding scale system of mandated disclosures, reporting requirements for electioneering communications are limited to the specific period in time just before an election.

Consequently, the Court finds that any burdens imposed by distributing electioneering communications before an election are minimal and outweighed by

---

[6] *See* Mont. Code Ann. § 13-1-101(15)(b).

the public's interest in transparency and disclosure of the individuals or groups vying for their attention. Further, the disclosure requirements imposed on groups that distribute electioneering communications are substantially related to these interests. Accordingly, the Court finds that MCA § 13–1–101(15)(a) satisfies exacting scrutiny. Thus, the Court grants Defendants' motion for summary judgment and denies Plaintiff' motion as it pertains to the constitutionality of electioneering communications. Claim 2 of NAGR's complaint is dismissed.

### C. Montana's Vote Disclosure Law - Claim 3

As discussed, in its third claim for relief, NAGR asserts that Montana's vote disclosure law, i.e., MCA § 13–35–225(3), violates the First Amendment. Defendants do not oppose summary judgment on this claim and state that they "do not plan to further defend against the challenge to [MCA] § 13–35–225(3)." (Doc. 35 at 14.) Although it could be argued that this claim is now moot because NAGR's challenge to this statute is uncontested, Ninth Circuit precedent dictates otherwise. *See Jacobus v. Alaska*, 338 F.3d 1095, 1102 (9th Cir. 2003) ("[D]ismissal of a case on grounds of mootness would be justified only if it were absolutely clear that the litigant no longer had any need of the judicial protection that it sought."). Indeed, because MCA § 13–35–225(3) has not been repealed, the only thing preventing the COPP from enforcing the law is the office's voluntary

cessation. The law is thus still theoretically enforceable and NAGR's claim is not moot. *Jacobus*, 338 F.3d at 1103 ("Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant free to return to his old ways.") (citation omitted).

Accordingly, because the motion is uncontested as to this claim, the Court will grant NAGR's motion in part and award judgment on its third claim for relief. It thus appears that NAGR's requested declaratory relief should be granted and a permanent injunction issued. As such, Defendants will be given 30 days to show cause why declaratory relief should not be awarded and why a permanent injunction should not be issued.

Accordingly, IT IS ORDERED that:

(1) Defendants' Cross-Motion for Summary Judgment (Doc. 34) is GRANTED;

(2) Consolidated Plaintiffs' Cross-Motion for Summary Judgment (Doc. 27) is GRANTED in part and DENIED in part in accordance with the above order; and

(3) Defendants shall show cause, within thirty (30) days of this Order, why declaratory relief should not be awarded on NAGR's third claim for relief and why a permanent injunction should not be issued.

Dated this 6th day of September, 2017.

*Dana L. Christensen*
Dana L. Christensen, Chief Judge
United States District Court